1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LILIYA WALSH, et al.,                    No.   2:13-cv-2077 MCE KJN (PS)

12                  Plaintiffs,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   AMERICAN MEDICAL RESPONSE, et
     al.,
15
                    Defendants.
16

17        Plaintiffs Liliya Walsh and Peter Walsh (collectively "plaintiffs"), proceeding without

18   counsel, commenced this action on October 7, 2013, alleging claims under 42 U.S.C. § 1983 and

19   California state law against the Rocklin Police Department, Placer County, American Medical

20   Response West ("AMR"), Sutter Roseville Medical Center ("Sutter"), and Telecare Placer

21   Psychiatric Health Facility ("Telecare") (collectively "defendants").  (ECF No. 1.)  On February

22   6, 2014, plaintiffs filed a First Amended Complaint ("FAC") as a matter of right.  (ECF No. 5.)

23   Presently before the court are defendants' motions to dismiss, all of which seek to dismiss

24   plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

25   upon which relief can be granted.[1]  (ECF Nos. 8, 17, 18, 21, 33.)  Plaintiffs filed oppositions to all

26

27   _____

     [1] Sutter has also filed, in the alternative, a motion for a more definite statement.  Because the
     court recommends that Sutter's motion to dismiss be granted for the reasons discussed below,
28   Sutter's alternative motion for a more definite statement should be disregarded.

                                              1

1  five motions to dismiss.  (ECF Nos. 12, 36, 37, 38, 39.)  Defendants all filed replies in support of

2  their respective motions.  (ECF Nos. 15, 40 41, 42, 43.)

3      The court heard this matter on its May 15, 2014 law and motion calendar.  Plaintiffs Liliya

4  Walsh and Peter Walsh appeared on behalf of themselves.  Attorney Alison Vitacolonna appeared

5  on behalf of defendants Placer County and Telecare.  Attorney Andrew Caulfield appeared on

6  behalf of defendant Rocklin Police Department.  Attorney Scott Kanter appeared on behalf of

7  defendant AMR.  No appearance was made on behalf of defendant Sutter.

8      The undersigned has fully considered the parties' briefs, the parties' oral arguments, and

9  appropriate portions of the record.  For the reasons that follow, it is recommended that

10  defendants' motions to dismiss be granted, but with certain leave to amend.

11  I.      BACKGROUND

12      The background facts are taken from plaintiffs' First Amended Complaint.  (See ECF No.

13  5.)  On October 1, 2012, plaintiff Liliya Walsh was prescribed medication for an infection that

14  was causing pain and swelling in her jaw and throat areas.  (Id. at ¶¶ 21-22.)  On October 5, 2012,

15  she took more than the prescribed dosage in order to better manage the pain she was suffering.

16  (Id. at ¶ 28.)  As a result, she suffered an adverse reaction to the medication, wrote a note to her

17  husband Peter regarding the medication she ingested, and then fell unconscious.  (Id.)  Later that

18  day, Peter arrived home to find Liliya unconscious in their bedroom and called 911.  (Id. at ¶ 29.)

19      Around 5:00 p.m. that evening, paramedics, who were employees of defendant AMR,

20  arrived at plaintiffs' home to transport Liliya to Sutter Roseville Medical Center.  (Id. at ¶ 30.)

21  One of the paramedics asked Peter whether Liliya had attempted to commit suicide, Peter replied

22  by saying, "No . . . she was trying to manage the pain."  (Id.)  When the paramedics arrived on the

23  scene, Liliya was unable to walk down the stairs of plaintiffs' home and required the paramedics'

24  assistance getting downstairs.  (Id. at ¶ 31.)  Plaintiffs allege that the paramedics "negligently

25  carried [Liliya] down [the stairs] without the use of a stretcher."  (Id.)  Plaintiffs further allege

26  that the paramedics made "highly offensive and rude jokes in the presence of [plaintiffs]."  (Id.)

27  In particular, plaintiffs allege that the paramedics referred to other people they knew who could

28  take more medication than Liliya did without suffering an adverse reaction and "intimated that

2

1  alcohol or other drugs were involved to create [Liliya's] symptoms." (Id.)

2         After Liliya was placed in the ambulance, a paramedic began to ask her questions

3  regarding whether she had combined alcohol with her medication.  (Id. at ¶ 32.)  Liliya was

4  unable to verbally communicate her answers, which caused the paramedic to become frustrated

5  with her.  (Id. at ¶¶ 32-33.)  The paramedic began to yell "profusely" at Liliya and "directed

6  negative comments towards [her] with implications that she was a bad mother." (Id. at ¶¶ 33-34.)

7  During this questioning, the paramedic yelled at Liliya, "so you want a 5150?" which Liliya

8  perceived as a threat. (Id. at ¶¶ 34-35.)

9         Officers from the Rocklin Police Department were dispatched to plaintiffs' house to

10  conduct a welfare check on Liliya.  (Id., Exhibit 1 (Application for 72-hour Detention for

11  Evaluation and Treatment of Liliya Walsh).)  Officer J. Paxton of the Rocklin Police Department

12  authorized an application to place Liliya into an involuntary 72-hour detention for evaluation and

13  treatment pursuant to California Welfare and Institutions Code Section 5150.  (Id.)  The

14  authorized application for the 5150 hold states that Liliya was found unconscious, that she had

15  taken at least eight Hydrocodone pills, and that a "suicide note" was located "stating that [Liliya]

16  loved her family + was sorry." (Id.)  This application was signed by Officer Paxton and directed

17  that Liliya be held for 72 hours at a "designated mental health facility" for treatment and

18  evaluation because the circumstances indicated that she was a danger to herself and others.  (Id.)

19  Plaintiffs assert that this 5150 hold was erroneously issued by Officer Paxton and "would not

20  have been put in place had it not been for [an unidentified] AMR paramedic's poor judgment,

21  unprofessionalism, lack of patience and inconsideration." (Id. at ¶¶ 37, 42, 44.)  Plaintiffs further

22  assert that Officer Paxton did not have probable cause to issue the hold, "was not trained to make

23  assessments for 5150 hold[s]," and did not have first-hand knowledge of Liliya's condition when

24  he signed the authorization.  (Id. at ¶¶ 42, 52.)  Plaintiffs also assert that "Rocklin Police

25  Department did not have policy, procedure, and training appropriate for identifying, assessing,

26  and placing a 5150 hold," which resulted in Liliya's wrongful imprisonment.  (Id.)

27  ////

28  ////

3

1    Pursuant to the 5150 hold, Liliya was transported by AMR employees by ambulance to

2    Sutter Roseville Medical Center, where she spent the next 24 hours in the emergency room

3    waiting for a bed to become available.  (Id. at ¶ 38.)  During her time there, Liliya requested

4    information from the staff regarding her rights as a patient, contact information for a patient rights

5    advocate, "and the application and authority upon which the 5150 hold was placed on her."  (Id.

6    at ¶¶ 41-42.)  She was initially refused this information, but was later supplied with a fact sheet

7    regarding 5150 holds, a sheet explaining patients' rights and responsibilities, and phone numbers

8    of local patient rights advocates; however, the phone numbers she was provided were either

9    incorrect, for advocates who had retired, or for advocates who were not available on weekends.

10   (Id. at ¶¶ 41-42, 46, 54, 56-59.)

11   Plaintiffs allege that an unidentified nurse at Sutter "paid no attention to [Liliya's] medical

12   needs or concerns" when the nurse stated that Liliya had no infection after Liliya requested

13   treatment for her medical condition and "show[ed] the nurse the discharge excreting from [her]

14   gums and salivary ducts."  (Id. at ¶ 45.)

15   During the late night on October 5, 2012, and early morning on October 6, 2012, two

16   unknown women came to Liliya and one of them told her that she would need to undergo surgery

17   for her condition.  (Id. at ¶¶ 47-48.)  Liliya requested that both women provide their respective

18   identities, employers, and positions; however, neither woman complied with this request.  (Id.)

19   Liliya was later told that the woman who informed her of the need for surgery was Dr. Hichkok;

20   however, the other woman was never identified.  (Id. at ¶ 49.)  Plaintiffs allege that "Sutter

21   hospital did not have policy/procedure in place for assessment and administration of 5150," and

22   that it did not have staff properly trained to evaluate the 5150 hold placed on Liliya.  (Id. at ¶ 52.)

23   On October 6, 2012, another woman came to Liliya representing that she worked for

24   Placer County Mental Hospital and that she was authorized to make a psychiatric evaluation.  (Id.

25   at ¶ 50.)  Liliya requested to see the woman's badge to confirm her identity, but the woman

26   refused.  (Id.)  The woman then threatened Liliya that there would be "serious unpleasant

27   consequences" if Liliya refused to talk; "[Liliya] felt that she had no choice but to speak [to the

28   woman] about her confidential medical issues."  (Id.)  Peter was present during this conversation

4

1   until the woman had him leave.  (Id. at ¶ 51.)  Plaintiffs contend that this woman lied about her

2   affiliation with Placer County Mental Hospital and her authority to make a psychiatric evaluation

3   because Liliya was later given a paper identifying this woman as "Kaitlin," a crisis worker for a

4   private entity entitled either Sierra Mental Wellness or Sierra Family Services.  (Id. at ¶¶ 50, 52.)

5         Shortly before 4:00 p.m. on October 6, 2012, an unidentified Sutter nurse told plaintiffs

6   that Liliya would be transported to Heritage Hospital around 5:30 p.m. and that Liliya had no

7   choice but to go with the supplied transport.  (Id. at ¶ 61.)  Plaintiffs allege that "[t]he Sutter nurse

8   assaulted [Liliya] with psychiatric medication to force compliance to go."  (Id.)  The nurse

9   "reluctantly backed off" after Liliya asked why the nurse was forcing medication upon her.  (Id.)

10  Sutter staff promised plaintiffs that upon arrival at Heritage Hospital, Liliya would receive an

11  evaluation by a psychiatrist to determine whether she would be permitted to go home, that such

12  an evaluation should only take a few hours, and that she should be able to go home later that

13  night.  (Id. at ¶ 62.)  Based on this representation, plaintiffs complied.  (Id.)

14        During her transport, Liliya noticed that she was not heading towards Heritage Hospital

15  and asked the ambulance driver why they were taking a different route; the driver responded by

16  stating that the instructions were to take Liliya to Telecare Placer Psychiatric Health Facility.  (Id.

17  at ¶ 63.)  Upon learning this fact, Liliya "feared for her life and well-being and felt like she was

18  being kidnapped."  (Id. at ¶ 64.)

19        Upon arriving at Telecare, Liliya was placed in a small, isolated room with no furniture.

20  (Id. at ¶ 66.)  During her stay at Telecare, Liliya met with a Telecare nurse named Carol on

21  several occasions.  (Id. at ¶¶ 65, 69, 71, 73, 76, 81-85.)  During these occasions, Carol generally

22  treated Liliya unprofessionally and, on one occasion, after Liliya asked when she would be able to

23  see a psychiatrist for an evaluation, "Carol responded with anger and aggressively yelled in

24  [Liliya's] face."  (Id. at ¶¶ 70-78, 81-85.)  Plaintiffs allege that "Carol was so out of control that

25  she was spitting in [Liliya's] face."  (Id. at ¶ 71.)  When Liliya asked for certain information

26  regarding her rights as a patient, Carol refused to provide it.  (Id. at ¶ 76.)  Liliya also made a

27  request to unidentified members of Telecare's staff to see her medical records, but they refused to

28  provide these records and did not inform Liliya of her treatment options.  (Id. at ¶ 79.)  "There

1   was no psychiatrist present at Telecare to conduct an evaluation on Saturday, October 6, 2012,"

2   and when Liliya requested a list of other psychiatrists so that she could receive a more expedient

3   evaluation, Carol refused to provide her with any such information.  (<u>Id.</u> at ¶ 81.)

4        On October 7, 2012, at approximately 4:00 p.m., Liliya received an evaluation from Dr.

5   Sargin.  (<u>Id.</u> at ¶ 89.)  "Upon conclusion of the evaluation, Dr. Sargin stated that he didn't see any

6   basis for [Liliya's] detention and said that he was releasing her to go home."  (<u>Id.</u>)  Following this

7   evaluation, plaintiff inquired with Telecare staff regarding her release, but was "told that Dr.

8   Sargin was gone for the day "and that no arrangements had been made for her release."  (<u>Id.</u> at ¶

9   90.)  Liliya was finally released from Telecare and from the 5150 hold on the afternoon of

10  October 8, 2012.  (<u>Id.</u> at ¶ 91.)

11       Plaintiffs allege that the above events caused Liliya to suffer from "overwhelming mental,

12  emotional, and physical" trauma.  (<u>Id.</u> at ¶ 93.)  Plaintiffs further allege that Peter "suffered

13  emotionally and physically, with troubles sleeping having to deal with his wife's involuntary

14  confinement."  (<u>Id.</u> at ¶ 94.)

15       Based on these factual allegations, plaintiffs assert the following fifteen causes of action

16  against defendants.

17       In their first cause of action, plaintiffs allege that defendants Sutter, Telecare, Rocklin

18  Police Department, and Placer County violated 42 U.S.C. § 1983.  (<u>Id.</u> at ¶¶ 95-99.)  Specifically,

19  plaintiffs assert that the Rocklin Police Department lacked probable cause to believe that Liliya

20  was a danger to herself or others in issuing the 5150 hold and that Officer Paxton failed to read to

21  or provide Liliya with her "5150 Miranda rights."  (<u>Id.</u> at ¶¶ 96-97.)  Plaintiffs further allege that

22  Sutter, Telecare, and Rocklin Police Department acted under the color of law "to wrongfully

23  detain Liliya," which constituted "a deprivation of [her] constitutional rights."  (<u>Id.</u> at ¶ 98.)

24       In their second cause of action, plaintiffs allege that Sutter, Telecare, Rocklin Police

25  Department, and Placer County violated plaintiffs' Fourteenth Amendment due process rights by

26  implementing customs or policies that resulted in their respective employees intentionally

27  denying Liliya timely medical treatment and violating state and federal law.  (<u>Id.</u> at ¶¶ 101-07.)

28  ////

In their third and fourth causes of action, plaintiffs assert that defendants AMR, Sutter, Telecare, and Rocklin Police Department committed the tort of false arrest/false imprisonment when they detained Liliya without sufficient legal authority.  (Id. at ¶¶ 109-16.)

In their fifth cause of action, plaintiffs allege that Sutter committed battery when its employees applied force to Liliya in a harmful and offensive manner without Liliya's consent during her stay at Sutter's facility.  (Id. at ¶¶ 117-20.)

In their sixth cause of action, plaintiffs allege that Sutter's and Telecare's employees committed assault against Liliya during her stay at their respective facilities.  (Id. at ¶¶ 121-24.)

In their seventh[2] and eighth causes of action, plaintiffs allege that all defendants both intentionally and negligently inflicted emotional distress on plaintiffs in connection with their respective dealings with plaintiffs.  (Id. at ¶¶ 128-30.)

In their ninth cause of action, plaintiffs allege that AMR and Rocklin PD defamed plaintiffs by publishing the 5150 hold application that falsely stated that Liliya was a danger to herself and others.  (Id. at ¶¶ 131-34.)

In their tenth cause of action, plaintiffs assert that AMR, Rocklin Police Department, Sutter and Telecare violated plaintiffs' rights under California's Lanterman-Petris-Short Act ("LPS Act") in connection with their respective dealings with plaintiffs.  (Id. at ¶¶ 135-39.)

In their eleventh cause of action, plaintiffs assert that AMR, Sutter, Telecare and Placer County all committed medical malpractice in connection with their respective dealings with plaintiffs.  (Id. at ¶¶ 140-42.)

In their twelfth cause of action, plaintiffs allege that all defendants engaged in a "conspiracy" to place Liliya on a 72-hour 5150 hold without probable cause.  (Id. at ¶¶ 143-46.)

In their thirteenth cause of action, plaintiffs allege that AMR, Sutter, Telecare and Placer County all made various misrepresentations upon which plaintiffs relied to their detriment over

---

[2] Plaintiffs erroneously list two "sixth" causes of action in their FAC.  Accordingly, from this point forward, the court refers to plaintiffs' sixth through fifteenth causes of action by their correct numerical order, not as plaintiffs number them in their FAC.  For example, the court refers to plaintiffs' second "sixth" cause of action (intentional infliction of emotional distress) as their seventh cause of action and "seventh" cause of action (negligent infliction of emotional distress) as their eighth cause of action.

1    the course of these defendants' respective dealings with plaintiffs.  (Id. at ¶¶ 147-50.)

2           In their fourteenth and fifteenth causes of action, plaintiffs allege that Sutter, Placer

3    County and Telecare violated California's Welfare and Institutions Code §§ 5325, 5326.2 in

4    connection with their respective dealings with plaintiffs.  (Id. at ¶¶ 151-60.)

5            Plaintiffs request relief in the form of compensatory and punitive damages against all

6    defendants.  Plaintiffs further request an order requiring defendants to remove "any and all

7    references to suicide, suicide [sic] thoughts, attempts to harm herself, etc. from Liliya Walsh's

8    medical records."  (Id. at 27.)  Finally plaintiffs request the following injunctive relief: (1) "an

9    order compelling defendants to designate funds for patient rights advocacy and to make patient

10   rights advocacy available 24 hours a day, 7 days a week"; (2) an order compelling Rocklin Police

11   Department to undergo "5150" training; (3) "an order compelling . . . Telecare and Sutter to

12   provide adequate training to its employees"; (4) "an order compelling . . . Sutter to provide

13   independent full-time advocacy 24-hours a day/7 days a week"; and (5) an order compelling

14   AMR to provide training to all of its paramedics that includes sensitivity training.  (Id. at 27-28.)

15   II.    Legal Standard

16          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

17   challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

18   Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

19   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

20   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

21   also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

22   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

23   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

24   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

25   factual content that allows the court to draw the reasonable inference that the defendant is liable

26   for the misconduct alleged."  Id.

27   ////

28   ////

8

1    In considering a motion to dismiss for failure to state a claim, the court accepts all of the

2    facts alleged in the complaint as true and construes them in the light most favorable to the

3    plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

4    however, required to accept as true conclusory allegations that are contradicted by documents

5    referred to in the complaint, and [the court does] not necessarily assume the truth of legal

6    conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

7    1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

8    prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

9    to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

10   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

11   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

12   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

13   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

14   evaluating them under the standard announced in Iqbal).

15   In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

16   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

17   matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

18   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

19   consider a memorandum in opposition to a defendant's motion to dismiss to determine the

20   propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

21   1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

22   whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

23   2003).

24   III.    Defendants' Motions to Dismiss

25        A.    Plaintiffs' Section 1983 Claims

26        Plaintiffs state their first cause of action pursuant to 42 U.S.C. § 1983.  Section 1983 does

27   not provide substantive rights; rather, it is "a method for vindicating federal rights elsewhere

28   conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (citations and internal quotation marks

9

1   omitted).  In pertinent part, Section 1983 states as follows:

2
3       Every person who, under color of any statute, ordinance, regulation, custom or
        usage, of any State or Territory or the District of Columbia, subjects, or causes to
        be subjected, any citizen of the United States or other person within the
4       jurisdiction thereof to the deprivation of any rights, privileges, or immunities
        secured by the Constitution and laws, shall be liable to the party injured in any
5       action at law, suit in equity, or other proper proceeding for redress . . . .

6   42 U.S.C. § 1983.

7       To sufficiently plead a cognizable Section 1983 claim, a plaintiff must allege facts from

8   which it may be inferred that (1) he or she was deprived of a federal right, and (2) a person who

9   committed the alleged violation acted under the color of state law.  West v. Atkins, 487 U.S. 42,

10  48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).  Additionally, a plaintiff must

11  allege that he or she suffered a specific injury and show a causal relationship between the

12  defendant's conduct and the injury suffered.  See Rizzo v. Goode, 423 U.S. 362, 371-72 (1976).

13      In their first cause of action, plaintiffs do not specify which Constitutional or other federal

14  right they seek to vindicate through Section 1983.  Rather, it appears that they attempt to plead

15  multiple Constitutional violations.  In particular, they appear to allege that Rocklin Police

16  Department violated Liliya Walsh's Fourth Amendment rights when Officer Paxton authorized

17  the application to place her on a 5150 hold without probable cause.  (ECF No. 5 at ¶ 97.)

18  Plaintiffs also allege that Sutter, Telecare, and Rocklin Police Department engaged in actions "to

19  wrongfully detain Liliya Walsh under 5150 consisted of a deprivation of Liliya Walsh's

20  constitutional rights."  (Id. at ¶ 98.)  However, plaintiffs do not specify which rights these

21  defendants allegedly violated or which of their actions caused these alleged violations.  Before

22  any claims may be found to be cognizable, plaintiffs must separate each specific claim they wish

23  to pursue, identify which defendants relate to each particular claim, and identify the

24  Constitutional right implicated by each claim.

25      In addition to these initial deficiencies, each defendant named in plaintiffs' first cause of

26  action argues that the FAC fails to show that Section 1983's other requirements have been met.

27  These arguments are considered below with respect to each defendant named in the first cause of

28

1    action.

2               1.      Section 1983 Claims Brought by Peter Walsh

3          As an initial matter, all defendants named in plaintiffs' first cause of action argue that the

4    FAC fails to allege any facts that would support a claim by Peter Walsh under Section 1983.  The

5    court agrees.  "The 'cause of action for deprivation of civil rights' created by section 1983 'is an

6    action personal to the injured party,' as the language of the statute itself only 'grants the cause of

7    action 'to the party injured.'"  Allen v. Washington, 2006 WL 7132918 at *24 (W.D. Wash. Oct.

8    24, 2006) (quoting Jaco v. Bloechle, 739 F.2d 239, 241 (6th Cir. 1984)); see also Estate of Amos

9    v. City of Page, 257 F.3d 1086, 1093 (9th Cir. 2001) (holding that a party bringing a Fourteenth

10   Amendment equal protection claim under Section 1983 must assert his or her own rights and

11   interests, not those of third parties; Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000)

12   ("[A] section 1983 cause of action is entirely personal to the direct victim of the alleged

13   constitutional tort.").

14         Here, the allegations in the FAC allude that Peter followed Liliya and the paramedics to

15   Sutter and was present with Liliya during portions of her stay at that particular facility.  In

16   addition, plaintiffs allege the following with respect to the injuries Peter suffered as a result of the

17   events alleged in the FAC:

18           Peter Walsh suffered emotionally and physically, with troubles sleeping having to
19           deal with his wife's involuntary confinement.  Peter Walsh witnessed his wife's
             undue hardship and suffering from the foregoing events and was overcome with
20           helplessness.  He was unable to visit his wife as much as he desired and was
             prohibited from accompanying her during the transfer from Sutter to Telecare.
21           Peter Walsh suffered panic during the period of Liliya Walsh's disappearance due
22           to the misleading information from Sutter and intentional withholding of plans to
             take her to Telecare instead of Heritage Oaks Hospital.

23

24   (ECF No. 5 at ¶ 94.)

25         Construed liberally, the allegations in the FAC with respect to Peter Walsh appear to be an

26   attempt to state a claim for loss of consortium within the auspices of Section 1983.  However,

27   such a right is not recognized as a Section 1983 claim because it is merely collateral to Liliya's

28   Section 1983 claims.  Allen, 2006 WL 7132918 at *24 (W.D. Wash. Oct. 24, 2006) (quoting

                                                11

1    Stallworth v. City of Cleveland, 893 F.2d 830, 838 (6th Cir.1990) ("[F]ederal courts have held

2    that section 1983 'does not reach' the claim for loss of consortium made by the spouse of a

3    plaintiff who brings a cause of action for violation of his or her civil rights, because such a claim

4    'does not represent an injury based on a deprivation of' the spouse's 'rights, privileges or

5    immunities secured by federal law.'"); Meaney v. Dever, 170 F.Supp.2d 46, 64 (D. Mass. 2001)

6    ("A spouse of a federal civil rights victim is not permitted to raise a separate ancillary cause of

7    action for loss of consortium based solely upon the federal civil rights violation."), reversed and

8    remanded on other grounds by Meaney v. Dever, 326 F.3d 283 (1st Cir. 2003); Quitmeyer v.

9    Southeastern Pennsylvania Transp. Authority, 740 F.Supp. 363, 370 (E.D. Pa. 1990) ("[T]here is

10   no authority to permit spousal recovery for loss of consortium based on violations of other

11   spouse's civil rights.").  Furthermore, the allegations in the FAC do not show that the defendants

12   otherwise engaged in conduct that violated Peter Walsh's rights in a manner that is cognizable

13   under Section 1983.  Accordingly, Peter Walsh's claims brought against defendants pursuant to

14   Section 1983 should be dismissed without leave to amend.  See California Architectural Bldg.

15   Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988) ("Valid reasons for denying

16   leave to amend include undue delay, bad faith, prejudice, and futility."); Noll v. Carlson, 809 F.2d

17   1446, 1448 (9th Cir. 1987).

18                   2.      Rocklin Police Department

19         Defendant Rocklin Police Department contends in its motion to dismiss that it is not a

20   proper party-defendant to a Section 1983 claim.  This argument is well-taken.  The term

21   "persons" encompasses state and local officials sued in their individual capacities, private

22   individuals, and entities which act under the color of state law and local governmental entities.

23   Vance v. Cnty. of Santa Clara, 928 F.Supp. 993, 995-96 (N.D. Cal. 1996).  However, the Rocklin

24   Police Department is a municipal department within the City of Rocklin, and is not, as a general

25   matter, considered a "person" within the meaning of Section 1983.  See United States v. Kama,

26   394 F.3d 1236, 1239 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally

27   not considered 'persons' within the meaning of Section 1983."); Rodriguez v. Cnty. of Contra

28   Costa, 2013 WL 5946112 at *3 (N.D. Cal. Nov. 5, 2013) (citing Hervey v. Estes, 65 F.3d 784,

                                                      12

1   791 (9th Cir. 1995)) ("Although municipalities, such as cities and counties, are amenable to suit

2   under Monell, sub-departments or bureaus of municipalities, such as the police departments, are

3   not generally considered "persons" within the meaning of § 1983."); Gonzales v. City of Clovis,

4   2013 WL 394522 (E.D. Cal. Jan. 30, 2013) (holding that the Clovis Police Department is not a

5   "person" for purposes of Section 1983); Wade v. Fresno Police Dep't, 2010 WL 2353525 at *4

6   (E.D. Cal. June 9, 2010) (finding the Fresno Police Department to not be a "person" under

7   Section 1983).

8          In their opposition briefing, plaintiffs argue that Rocklin Police Department is a proper

9   defendant under Section 1983 because "[m]unicipal police departments are 'public entities' under

10  California law and, hence, can be sued in federal court for alleged civil rights violations."  (ECF

11  No. 12 at 5.)  Plaintiffs cite to the Ninth Circuit Court of Appeals' decision in Shaw v. California

12  Dep't of Alcoholic Beverage Control, 788 F.2d 600 (9th Cir. 1986), to support this proposition.

13  However, plaintiffs' reliance on that case is misplaced.  In Shaw, the Ninth Circuit Court of

14  Appeals held that a police department is a "public entity" under California law and as such, can

15  be sued in Federal court.  Id. at 605.  However, the issue here is not whether Rocklin Police

16  Department may be sued in federal court.  Rather, the question is whether Rocklin Police

17  Department is a proper party, i.e. a "person," for purposes of a Section 1983 claim.  Shaw did not

18  address this issue.  See Rodriguez, 2013 WL 5946112 at *3 ("[T]he question is whether the

19  [defendant police department] is a proper party for purposes of a § 1983 claim, which Shaw did

20  not address.").  Rocklin Police Department is not a municipality.  Instead, it is a municipal

21  department or subdivision of the City of Rocklin.  Accordingly, Rocklin Police Department

22  should be dismissed as a defendant from plaintiffs' first claim under Section 1983.  Moreover,

23  since further amendment with respect to plaintiffs' Section 1983 claims against this defendant

24  would be futile, the dismissal of these claims should be without leave to amend.

25  ////

26  ////

27  ////

28  ////

13

1                            3.      Sutter and Telecare

2          Both Sutter and Telecare argue that plaintiffs' Section 1983 claims against them should be

3    dismissed because the allegations in the FAC show that they are private entities that were not

4    acting under the color of state law.[3]  Sutter's argument cites no supporting authority.  Telecare

5    does cite to case law in support of its argument, which is addressed below.

6          As stated above, to state a claim under section 1983, a plaintiff must allege that: (1)

7    defendant was acting under color of state law at the time the complained of act was committed;

8    and (2) defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the

9    Constitution or laws of the United States. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48

10   (1988).  Normally, private parties, including corporations, are not acting under color of state law,

11   and as such, no cause of action under Section 1983 is available.  Price v. Hawaii, 939 F.2d 702,

12   707-08 (9th Cir. 1991).  However, private entities can be liable for constitutional violations under

13   certain circumstances.  See, e.g., Fonda v. Gray, 707 F.2d 435, 437-38 (9th Cir. 1983) ("Section

14   1983 actions may be brought to redress constitutional violations effected under color of state law.

15   A private party may be considered to have acted under color of state law when it engages in a

16   conspiracy or acts in concert with state agents to deprive one's constitutional rights.").  The

17   Supreme Court has articulated four tests for determining whether a private party's conduct

18   constitutes state action: (1) the state compulsion test, (2) the public function test, (3) the joint

19   action test, and (4) the governmental nexus test.  Franklin v. Fox, 312 F.3d 423, 445 (9th Cir.

20   2002).

21         Telecare relies on Sturm v. El Camino Hosp., 2010 WL 725563 (N.D. Cal. Feb. 26, 2010),

22   to support its assertion that the allegations in the FAC show that it did not act under the color of

23   state law for purposes of Section 1983.  In Sturm, the plaintiff brought a Section 1983 claim

24   against a private hospital on the basis that the hospital's staff violated his Constitutional rights by

25   _____

26   [3] Sutter has requested judicial notice of the fact that it is a private entity and has supported this
     request with records from the California Secretary of State's website reflecting this fact.  (ECF
     No. 33-2.)  However, it is unnecessary for the court to take judicial notice of the requested
27   documents because plaintiffs admit to Sutter's status as a private entity in their opposition to
     Sutter's motion to dismiss and state that they will reflect this fact in a further amended complaint.
28   (ECF No. 37 at 5.)

                                                  14

1    placing him on an involuntary hold pursuant to Section 5150.  Id. at *1. The district court

2    analyzed the issue of whether the private hospital acted under color of state law under all four

3    tests articulated by the United States Supreme Court and held that the defendant's conduct  did

4    not constitute state action under any of them.  Id. at *1-*4.  In coming to this conclusion, the

5    district court relied heavily on the fact that the employees of the private hospital independently

6    initiated and carried out the involuntary hold under Section 5150.  Id.  at *5 ("In this case, a nurse

7    and on-call doctor at a private hospital merely exercised a choice allowed by state law, and the

8    initiative came from the private parties, not from the state.")  However, unlike in Sturm,

9    plaintiffs' allegations in the present case indicate that it was Officer Paxton, a state actor, who

10   made the determination to place Liliya Walsh on a 5150 hold and that Sutter and Telecare later

11   detained her pursuant to that hold.  Under current Ninth Circuit precedent, this may be an

12   important factual distinction.  See Jensen v. Lane County, 222 F.3d 570, 573-75 (9th Cir. 2000)

13   (holding that a private psychiatrist acted under color of state law under the close nexus/joint

14   action test when he signed a detention order to have plaintiff placed on a five day involuntary

15   hold in the county psychiatric hospital after county employees initiated the evaluation process and

16   recommended that plaintiff be placed on the hold).

17          Nevertheless, the court finds it unnecessary to assess the impact of this distinction on

18   whether the FAC sufficiently alleges that Sutter and Telecare acted under color of state law

19   because plaintiffs' allegations as they are currently stated with respect to their first cause of action

20   are insufficient to state a claim against either Sutter or Telecare.  As noted above, plaintiffs fail to

21   indicate which rights these defendants allegedly violated or which of their actions caused these

22   alleged violations.  Accordingly, Liliya Walsh's first cause of action should be dismissed against

23   Sutter and Telecare, but this dismissal should be with leave to amend so that plaintiffs may

24   address the deficiencies outlined above.

25                    4.      Placer County

26          Plaintiffs' assertion of Section 1983 liability against Placer County appears to be premised

27   on allegations of Placer County's unconstitutional custom or policy.  Because there is no

28   respondeat superior liability under Section 1983, counties and municipalities may be sued under

                                                    15

1  Section 1983 only upon a showing that an official policy or custom caused the constitutional tort.

2  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691-94 (1978).  Stated

3  differently, "[i]t is only when the execution of the government's policy or custom . . . inflicts the

4  injury that the municipality may be held liable under § 1983." Canton v. Harris, 489 U.S. 378,

5  385 (1989).  "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for

6  constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

7  has not received formal approval through the body's official decisionmaking channels." Monell,

8  436 U.S. at 690-91.  A local governmental entity may "be liable if it had a policy or custom of

9  failing to train its employees and that failure to train caused the constitutional violation." Collins

10  v. City of Harker Heights, 503 U.S. 115, 123 (1992).  In order to state a claim under this "failure

11  to train" theory the "municipality's failure to train its employees in a relevant respect must

12  amount to 'deliberate indifference to the rights of persons with whom the [untrained employees]

13  come into contact.'" Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting City of

14  Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).

15       With regard to the pleading requirements for stating a claim under Monell, one federal

16  district court in California has explained:

17       In order to withstand a motion to dismiss for failure to state a claim,
         a *Monell* claim must consist of more than mere "formulaic
18       recitations of the existence of unlawful policies, customs, or
         habits." *Warner v. Cnty of San Diego*, 2011 U.S. Dist. LEXIS
19       14312, at *10, 2011 WL 662993 (S.D. Cal., Feb. 14, 2011).  Prior
         to the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth
20       Circuit had held that "a claim of municipal liability under section
         1983 is sufficient to withstand a motion to dismiss 'even if the
21       claim is based on nothing more than a bare allegation that the
         individual officers' conduct conformed to official policy, custom,
22       or practice.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624
         (9th Cir. 1988) (quoting *Shah v. Cnty. of L.A.*, 797 F.2d 743, 747
23       (9th Cir. 1986)).   In light of *Twombly* and *Iqbal*, however,
         something more is required; mere conclusory allegations are
24       insufficient.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557;
         *see also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL
25       662993.

26  J.K.G. v. County of San Diego, 2011 WL 5218253 at *8 (S.D. Cal. Nov. 2, 2011).

27  ////

28  ////

16

Here, the FAC contains, at most, only conclusory allegations regarding the role Placer County's alleged custom or policy played in the alleged Constitutional deprivations.  (See ECF No. 5 at ¶ 52 ("Because . . . Placer County failed to maintain clear policy/procedures and provide adequate training to people authorized to assess and place 5150 hold, Liliya Walsh was wrongfully imprisoned.").)  The FAC does not clearly specify a particular custom or policy of Placer County that caused a violation of plaintiffs' constitutional or federally-protected rights.  Furthermore, with respect to a claim based on a "failure to train" theory, plaintiffs do not even identify any Placer County employees that caused the alleged Constitutional deprivations.  Accordingly, plaintiffs fail to allege a claim against Placer County in their first cause of action.  The first cause of action should be dismissed as to Placer County.  Nevertheless, despite these shortcomings, it is not clear at this point in the litigation that amendment would be futile.  Therefore, dismissal should be with leave to amend.

5.      Plaintiffs' "Fourteenth Amendment" Claim

In their second cause of action, plaintiffs allege that the Rocklin Police Department, Sutter, Telecare and Placer County violated their Fourteenth Amendment rights.  However, plaintiffs do not expressly specify in the FAC which right or rights under the Fourteenth Amendment they are seeking to vindicate.

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty, and property" without due process of law.  U.S. Const., amend. XIV.  "[T]he touchstone of due process is protection of the individual against arbitrary action of government."  County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004).  The Due Process Clause confers both procedural and substantive rights — i.e., due process violations can refer either to a denial of fundamental procedural fairness (procedural due process violations), or the exercise of power without any reasonable justification in the service of a legitimate governmental objective (substantive due process violations).  See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "A procedural due process claim has two elements: deprivation of a constitutionally

17

1  protected liberty or property interest and denial of adequate procedural protection." Krainski v.

2  Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010);

3  accord Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) ("A procedural due

4  process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ;

5  and (2) a denial of adequate procedural protections.") (citation and quotation marks omitted).

6          To the extent that plaintiffs seek to bring a procedural due process claim under the

7  Fourteenth Amendment on the basis that defendants should have more expediently provided

8  Liliya Walsh with a review of the decision to place the 5150 hold on her or provided her some

9  form of additional pre-detention process (see ECF No. 5 at ¶ 106), the allegations in the FAC do

10  not support such a claim as a matter of law because "[n]umerous courts have recognized that

11  '[d]ue process does not require that a county provide a hearing for a person detained for seventy

12  two hours under section 5150.'" Forte v. Hyatt Summerfield Suites, Pleasanton, 2012 WL

13  6599724 at *7 (N.D. Cal. Dec. 18, 2012) (quoting Barrier v. County of Marin, 1997 WL 465201

14  at *3 (N.D. Cal.); see Doe v. Gallinot, 657 F.2d 1017, 1022 (9th Cir. 1981) ("The initial 72 hours

15  of detention [under California's Welfare & Institutions Code Section 5150] is justified as an

16  emergency treatment.  It is recognized that a probable cause hearing cannot be arranged

17  immediately.").

18          It appears that plaintiffs also seek to bring a claim under the Equal Protection Clause of

19  the Fourteenth Amendment.  In their opposition to Telecare's motion to dismiss, plaintiffs clarify

20  that Liliya Walsh's "Fourteenth Amendment Rights were violated when [Officer] Paxton and the

21  Rocklin PD intended to deprive her of equal protection of the law."  (ECF No. 39 at 6.)  However,

22  there is no allegation in the FAC that either plaintiff was discriminated against or treated

23  differently based on his or her membership in a protected class.  See Thornton v. City of St.

24  Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) ("To state a § 1983 claim for violation of the Equal

25  Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to

26  discriminate against the plaintiff based upon membership in a protected class.").

27          Based on a liberal construction of plaintiffs' allegations, it appears that plaintiffs also

28  attempt to state a Fourteenth Amendment substantive due process claim against these defendants.

1   (See ECF No. 5 at ¶ 101("The aforementioned acts of Defendants Sutter, Telecare, Rocklin PD

2   and Placer County in being deliberately indifferent to Liliya Walsh's serious medical needs,

3   health and safety and violating Liliya Walsh's civil rights were the direct and proximate result of

4   customs, practice, and policies of said Defendants, by and through their agencies, employees,

5   and/or agents, as alleged herein.").)  Persons involuntarily committed pursuant to Section 5150

6   may be able to state a cognizable Fourteenth Amendment substantive due process claim through

7   allegations of unsafe conditions of confinement.  Oyarzo v. Alameda Cnty. Med. Ctr., 2005 WL

8   701450 at *2-*3 (N.D. Cal. Mar. 15, 2005) (holding that plaintiff involuntarily committed

9   pursuant to California Welfare & Institutions Code Section 5150 alleged a cognizable Fourteenth

10  Amendment substantive due process claim with regard to policies, customs, practices and

11  procedures that allegedly allowed for plaintiff to commit suicide during his commitment); see

12  Youngberg v. Romeo, 457 U.S. 307, 315-16 (holding that involuntarily committed individuals

13  may bring a Fourteenth Amendment substantive due process claim with regard to unsafe

14  conditions of confinement).

15          However, plaintiffs improperly assert their second cause of action as a direct claim under

16  the Fourteenth Amendment.  Plaintiffs' Fourteenth Amendment claim must be asserted through

17  Section 1983.  See Magana v. Northern Mariana Islands, 107 F.3d 1436, 1442-43 (9th Cir. 1997)

18  (citing Monroe v. Pape, 365 U.S. 167 (1961)), overruled on other grounds by Monell v. Dep't of

19  Soc. Serv., 436 U.S. 658 (1978)) (stating that the United States Supreme Court has "made clear

20  the necessity for § 1983 as the statutory vehicle for bringing claims under the Fourteenth

21  Amendment"); Ngiraingas v. Sanchez, 495 U.S. 182, 187 (1990) ("Section 1983 was originally

22  enacted as § 1 of the Civil Rights Act of 1871. The Act was enacted for the purpose of enforcing

23  the provisions of the Fourteenth Amendment.").

24          Plaintiffs must also make allegations establishing, among other things, that the defendants

25  named in this cause of action are "persons" within the meaning of Section 1983.  However, for

26  the reasons stated above with respect to plaintiffs' first cause of action, Rocklin Police

27  Department is not a "person" within the meaning of Section 1983.  Therefore, plaintiffs' second

28  cause of action should also be dismissed without leave to amend with respect to this defendant.

19

1    Furthermore, with respect to the other defendants named in this cause of action, Sutter,

2    Telecare and Placer County, plaintiffs do not specify which Fourteenth Amendment right or

3    rights they are attempting to assert with respect to each defendant. Accordingly, plaintiffs'

4    second cause of action should be dismissed with leave to amend insofar as it is asserted against

5    these three defendants.

6          B.    <u>Plaintiffs' Claims for Punitive Damages against Rocklin Police Department and</u>

7               <u>Placer County</u>

8    In their FAC, plaintiffs request punitive damages as to all defendants. (ECF No. 5 at 27.)

9    Both Rocklin Police Department and Placer County argue that any claims for punitive damages

10   against them should be dismissed because they are public entities immune from punitive damages

11   under both Section 1983 and California state law. "A public entity cannot be sued under § 1983

12   as a matter of law for punitive damages." <u>Neveu v. City of Fresno</u>, 392 F. Supp. 2d 1159, 1183

13   (E.D. Cal. 2005) (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981)).

14   Furthermore, pursuant to California Government Code Section 818, "a public entity is not liable

15   for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily

16   for the sake of example and by way of punishing the defendant." <u>See Comm. for Immigrant</u>

17   <u>Rights of Sonoma Cnty. v. Cnty. of Sonoma</u>, 644 F. Supp. 2d 1177, 1208 (N.D. Cal. 2009)

18   ("California Government Code § 818 bars the award of punitive damages against a public

19   entity."). Accordingly, plaintiffs' request for punitive damages should be dismissed without leave

20   to amend insofar as it is alleged against Rocklin Police Department and Placer County.

21         C.    <u>Plaintiffs' State-Law Claims</u>

22             1.    <u>Peter Walsh's State-Law Claims</u>

23   As an initial matter, all defendants argue that plaintiffs fail to allege any facts showing

24   that Peter Walsh states any cognizable state-law claims. The court agrees that the factual

25   allegations underlying most of plaintiffs' state-law claims establish that Peter Walsh was in no

26   way involved in the events giving rise to those claims even though plaintiffs appear to allege that

27   he is a plaintiff with respect to every state-law cause of action asserted in the FAC. In particular,

28   plaintiffs make no allegations showing that Peter Walsh was subjected to events alleged in

20

1    connection with plaintiffs' claims for false arrest/false imprisonment (claims 3 and 4), battery

2    (claim 5), assault (claim 6), defamation (claim 9), medical malpractice (claim 11), or any of the

3    three causes of action for violations of various provisions of the LPS Act (claims 10, 14, 15).

4         It appears from the FAC that the alleged facts underlying these claims all center around

5    the alleged placement of the 5150 hold on Liliya Walsh and the events that transpired pursuant to

6    that hold.  Plaintiffs in no way allege that a 5150 hold was placed on Peter Walsh, that he was in

7    any way touched in a harmful or offensive manner by any of the defendants, assaulted in any

8    way, or that he received or was denied medical care that could form the basis for a medical

9    malpractice claim.  Furthermore, the allegations show that the alleged defamatory statements

10   underlying plaintiffs' claims for defamation only concerned Liliya Walsh.  (See ECF No.5 at ¶

11   133.)  Finally, insofar as Peter Walsh attempts to make a state-law claim for conspiracy (claim

12   12), this claim must fail as a matter of law because civil conspiracy does not constitute its own

13   cause of action.  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994)

14   ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who,

15   although not actually committing a tort themselves, share with the immediate tortfeasors a

16   common plan or design in its perpetration.").  It is apparent from the facts alleged in the FAC that

17   further amendment would not cure the above defects with respect to these claims asserted by

18   Peter Walsh.  Accordingly, these claims should be dismissed without leave to amend.[4]

19        The remaining state-law causes of action alleged by Peter Walsh, the seventh cause of

20   action for intentional infliction of emotional distress, eighth cause of action for negligent

21   infliction of emotional distress, and thirteenth cause of action for misrepresentation, also fail to

22   state a claim against any defendant named in the FAC.  With respect Peter Walsh's seventh and

23   eighth causes of action, plaintiffs merely rely on conclusory statements that defendants' conduct

24   was "extreme and outrageous," intentional or reckless, and caused plaintiffs severe emotional

25   distress.  (ECF No. 5 at ¶¶ 126, 129.)  These same conclusory allegations are stated with respect

26

27   ─────────────────

[4] Because plaintiffs' twelfth cause of action for conspiracy cannot form the basis of an independent cause of action, Liliya Walsh's conspiracy claims should also be dismissed without

28   leave to amend with respect to all defendants.

1    to both claims; plaintiffs do not even attempt to make independent allegations with respect to

2    their claim for negligent infliction of emotional distress.  Furthermore, plaintiffs do not provide

3    any allegations as to what conduct they claim to be "extreme or outrageous" or which defendant

4    engaged in that conduct.  Accordingly, plaintiffs fail to state a cause of action against any

5    defendant with respect to these claims.

6         When the allegations of the FAC are construed liberally, it appears that plaintiffs' claim

7    for "misrepresentation" is a claim for fraud.  "In alleging fraud or mistake, a party must state with

8    particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Plaintiffs do

9    not in any way identify which conduct they are claiming was fraudulent, let alone the who, what,

10   where, when and how of the alleged misconduct.  Furthermore, in order to state a cognizable

11   fraud claim, plaintiffs need to allege facts showing that they justifiably relied on the fraudulent

12   statement to their detriment.   Prasad v. BAC Home Loans Servicing LP, 2010 WL 5090331 at *6

13   (E.D. Cal. Dec. 7, 2010) (quoting Gil v. Bank of Am., Nat'l Ass' n, 138 Cal.App.4th 1371, 1381

14   (2006)) ("Under California law, the elements of common law fraud are 'misrepresentation,

15   knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages.'").

16   Plaintiffs do not allege that they relied on this statement; rather, they merely allege that they were

17   "injured."

18        Because plaintiffs make nothing more than unsupported conclusory allegations with

19   respect to their seventh, eighth, and thirteenth causes of action, these claims should be dismissed

20   with respect to Peter Walsh.[5]  However, it is not possible at this point for the court to properly

21   determine that these defects cannot be cured by further amendment.  Therefore, these three causes

22   of action should be dismissed with leave to amend.

23   ////

24   ////

25   ////

26

27   _____

28   [5] The conclusory allegations with respect to these three claims are also insufficient to support a
claim by Liliya Walsh against any defendant for the same reasons.  Her claims under these causes
of action are discussed in further detail below with respect to defendant AMR.

1          2.      Plaintiffs' State Law Tort Claims Against Rocklin Police Department and

2                  Placer County

3          Rocklin Police Department and Placer County argue that all of plaintiffs' state law claims

4  against them should be dismissed without leave to amend because plaintiffs failed to comply with

5  the California Tort Claims Act's ("CTCA") requirement that plaintiffs first present their state-law

6  claims to the proper public entity before presenting them in the present lawsuit.  With respect to

7  Rocklin Police Department, those claims are:  third claim for false arrest; fourth claim for false

8  imprisonment; seventh claim for intentional infliction of emotional distress; eighth claim for

9  negligent infliction of emotional distress; ninth claim for defamation; tenth claim for violations of

10  the LPS Act; and twelfth claim for conspiracy.  With respect to Placer County, those claims are:

11  seventh claim for intentional infliction of emotional distress; eighth claim for negligent infliction

12  of emotional distress; tenth claim for violations of the LPS Act; eleventh claim for medical

13  malpractice; twelfth claim for conspiracy; thirteenth claim for misrepresentation; fourteenth claim

14  for violation of California Welfare and Institutions Code Section 5325; and fifteenth claim for

15  California Welfare and Institutions Code Section 5325.2.  For the reasons discussed below, these

16  defendants' arguments are well-taken.

17          When adjudicating a supplemental state law claim, the federal courts must apply state

18  substantive law.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  The CTCA

19  provides that a party seeking to recover money damages from a public entity or its employees

20  must submit a claim to the entity before filing suit in court, generally no later than six months

21  after the cause of action accrues.[6]  See Cal. Gov't Code §§ 905, 911.2, 945.4, 950-950.2.

22  Presentation of a written claim and action on, or rejection of, the claim are conditions precedent

23  to suit.  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  "Timely

24  claim presentation is 'an element of the plaintiff's cause of action,'. . . , and thus a plaintiff must

25  'allege facts demonstrating or excusing compliance with the claim presentation requirement' in

26  his complaint."  Via v. City of Fairfield, 833 F. Supp.2d 1189, 1197 (E.D. Cal. 2011) (citations

27  _____

28  [6] The state-claim presentation requirements do not apply to federal civil rights actions.  Ford v.
   Long Beach Unified Sch. Dist., 461 F.3d 1087, 1089-90 (9th Cir. 2006).

23

1   omitted); <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal. 4th 201, 209 (2007) ("Timely claim

2   presentation is not merely a procedural requirement, but is, as this court long ago concluded, a

3   condition precedent to plaintiff's maintaining an action against defendant, and thus an element of

4   the plaintiff's cause of action".) (citation and quotation marks omitted).  A plaintiff may sue the

5   public entity and its employees only after the entity has acted upon or is deemed to have rejected

6   the claim on grounds other than for untimeliness.  <u>Mangold v. Cal. Pub. Utilities Comm'n</u>, 67

7   F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition

8   precedent to suit against a public entity, the timely presentation of a written claim and the

9   rejection of the claim in whole or in part.").  Failure to allege that a claim has been presented as

10  required by the CTCA is grounds for dismissal pursuant to Federal Rule of Civil Procedure

11  12(b)(6).  <u>Rivas v. California Franchise Tax Bd.</u>, 619 F. Supp. 2d 994, 1005 (E.D. Cal. 2008).

12                          a.      Peter Walsh's State-Law Claims Against Rocklin Police

13                                  Department and Placer County

14          As an initial matter, the court notes that while the FAC alleges that both plaintiffs filed a

15  governmental tort claim with Rocklin Police Department, Peter Walsh admitted on the record

16  during the hearing on defendants' motions to dismiss that he did not present his own independent

17  claim to either Rocklin Police Department or Placer County.  In order to satisfy the CTCA's

18  requirements, each person claiming injury must submit his or her own separate claim.  <u>Castaneda</u>

19  <u>v. Dep't of Corr. & Rehab.</u>, 212 Cal. App. 4th 1051, 1062, (Ct. App. 2013) ("Generally, each

20  claimant must file his or her own tort claim. When people suffer separate and distinct injuries

21  from the same act or omission, they must each submit a claim. One claimant cannot rely on a

22  claim presented by another.").  The time period in which Peter Walsh had to file such a claim

23  with either Rocklin Police Department or Placer County has long since passed.  Accordingly, all

24  of Peter Walsh's state-law claims against both Rocklin Police Department and Placer County

25  should be dismissed without leave to amend because amendment as to these claims would be

26  futile.

27  ////

28  ////

                                                    24

b.      Rocklin Police Department

Specific to Rocklin Police Department, plaintiffs allege in their FAC that they "filed state government tort claims with the State and Rocklin PD."  (ECF No. 5 at ¶ 19.)  Plaintiffs further allege that their claims were rejected via correspondence dated April 19, 2013, and June 10, 2013.  (Id.)  Finally, they allege that "[b]y letter dated 10/10/13, Forrest Richardson, Police Lieutenant for Rocklin PD informed Plaintiffs that the internal review of the complained [sic] filed with Rocklin PD on 4/5/13 was completed and the review 'revealed that the conduct of the involved officers was within the current law and Department Policy."  (Id.)

Rocklin Police Department argues that the personnel complaint does not satisfy the CTCA's requirements as to Liliya Walsh because she cannot show that the claim she alludes to in the FAC substantially complied with the statutory claim requirements.  (ECF No. 8-1 at 11.)  In support of this argument, Rocklin Police Department requests the court to take judicial notice of a certified copy of the claim letter Liliya Walsh submitted to Rocklin Police Department on April 5, 2014.  (ECF No. 8-2, Exhibit A.)  The court, however, declines to take judicial notice of this document at this time as it is unclear from the allegations in the FAC concerning Liliya Walsh's filing of a claim with the Rocklin Police Department that the document Rocklin Police Department is seeking to have judicially noticed is in fact the claim plaintiffs reference in the FAC.  In particular, the allegations in the FAC do not specify when this claim was filed; rather, it merely mentions that the claim was rejected via correspondence dated April 19, 2013, and June 10, 2013.

During the hearing, Liliya Walsh asserted that she did in fact timely file a claim with the Rocklin Police Department.  However, because the court cannot at this time determine from the allegations in the FAC whether the claim Liliya Walsh alleges to have submitted to the Rocklin Police Department substantially complied with the presentation requirements of the CTCA, and in light of the parties' dispute concerning this issue, Liliya Walsh's state-law claims against Rocklin Police Department should be dismissed with leave to amend.

In addition, if plaintiffs decide to amend Liliya Walsh's state-law claims as to this defendant, they shall attach copies of the alleged claim submitted by Liliya Walsh to Rocklin

1  Police Department and any correspondence between these parties regarding this alleged claim so

2  that the court may be able to determine whether the alleged claim in fact complied with the

3  requirements of the CTCA.  Plaintiffs are cautioned that in order to make a good faith allegation

4  that Liliya Walsh substantially complied with the claim requirements of the CTCA, they must be

5  able to show that claim submitted to the Rocklin Police Department at least minimally complied

6  with *all* of the CTCA's statutory requirements and that this compliance is substantial, meaning

7  that "the content of the correspondence to the recipient entity must at least be of such nature as to

8  make it readily discernible by the entity that the intended purpose thereof is to convey the

9  assertion of a compensable claim against the entity which, if not otherwise satisfied, will result in

10  litigation." Green v. State Center Community College Dist., 34 Cal. App. 4th 1348, 1358 (Ct.

11  App. 1995); Sandoval v. Merced Union High Sch., 2006 WL 1171828 at *12 (E.D. Cal. May 3,

12  2006).

13        California Government Code Section 910 sets forth the statutory requirements for the

14  content that must be presented to a public entity as part of a claim.  Among other things, Section

15  910 requires a claimant to state the "date, place, and other circumstances of the occurrence or

16  transaction which gave rise to the claim asserted" and to provide a "general description of the . . .

17  injury, damage or loss incurred so far as it may be known at the time of presentation." Cal. Gov't

18  Code § 910;[7] Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th

---

[7] Cal. Gov't Code § 910 states:

A claim shall be presented by the claimant or by a person acting on his or her
behalf and shall show all of the following:

(a) The name and post office address of the claimant.

(b) The post office address to which the person presenting the claim desires notices
to be sent.

(c) The date, place and other circumstances of the occurrence or transaction which
gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss
incurred so far as it may be known at the time of presentation of the claim.

1   441, 445 (2004).  If the face of the filed claim disclosed sufficient information to enable Rocklin

2   Police Department to make an adequate investigation of the claim's merits and settle it without

3   the expense of litigation, then there will be "substantial compliance" with the requirements of

4   Section 910.  Ardon v. City of Los Angeles, 52 Cal.4th 241, 247-48 (2011).  However, the

5   doctrine of substantial compliance cannot cure the "total omission of an essential element from

6   the claim, or remedy a plaintiff's failure to comply meaningfully with the statute." Sparks v.

7   Kern Cnty. Bd. of Supervisors, 173 Cal. App. 4th 794, 800 (2009).

8                                          b.        Placer County

9            As an initial matter, the court notes that plaintiffs do not allege compliance with the

10   CTCA in their FAC with respect to any of their state-law claims against Placer County.  "Failure

11   to allege facts in a complaint demonstrating or excusing compliance with prelitigation

12   governmental claims presentation requirements of the [California] Tort Claims Act subjects the

13   complaint to a motion to dismiss for failure to state a cause of action." Comm. for Immigrant

14   Rights of Sonoma Cnty., 644 F. Supp.2d at 1205 (citing State v. Superior Court (Bodde ), 32

15   Cal.4th 1234, 1239, 1243 (2004)).  Accordingly, plaintiffs' state-law claims against Placer

16   County may be dismissed solely on this ground.

17            Placer County, however, requests the court to take judicial notice of both plaintiffs'

18   original complaint and filing entitled "Notice of Hearing and Petition for Relief from Claim

19   Requirement [Pursuant to California Government Code Section 946.6]" (ECF No. 2) in order to

20   show that Liliya Walsh did file a claim with Placer County, but that this claim was untimely, thus

21   barring her from asserting her state-law tort claims against Placer County.  During the hearing on

22

23            (e) The name or names of the public employee or employees causing the injury,
             damage, or loss, if known.

24

25            (f) The amount claimed if it totals less than ten thousand dollars ($ 10,000) as of
             the date of presentation of the claim, including the estimated amount of any

26            prospective injury, damage, or loss, insofar as it may be known at the time of the
             presentation of the claim, together with the basis of computation of the amount

27            claimed. If the amount claimed exceeds ten thousand dollars ($ 10,000), no dollar
             amount shall be included in the claim. However, it shall indicate whether the claim

28            would be a limited civil case.

27

1    this matter, Liliya Walsh asserted that she did file a claim with Placer County concerning the

2    events alleged in the FAC and that she has filed a motion with the court requesting that it waive

3    the CTCA's timeliness requirement pursuant to California Government Code Section 946.6.  (See

4    ECF No. 2.)  However, this motion was dismissed on procedural grounds for plaintiffs' failure to

5    properly notice it for a hearing and plaintiffs have not yet sought renewal.  (See ECF No. 35.)

6    Nevertheless, in light of these events and the fact that plaintiffs are proceeding pro se in this

7    litigation, Liliya Walsh's state-law claims against Placer County should be dismissed, but with

8    leave to amend.

9           If plaintiffs do decide to amend their complaint as to these claims, they shall attach a copy

10   the claim Liliya Walsh allegedly submitted to Placer County as well as copies of any

11   correspondence between these parties regarding this alleged claim.  Plaintiffs are cautioned that

12   they must be able to make a nonfrivolous showing that either the claim allegedly presented to

13   Placer County substantially complied with the CTCA's presentation requirements, or that

14   plaintiffs should be excused from these requirements.  Furthermore, if plaintiffs seek to assert that

15   the timeliness requirement for the claim submitted to Placer County should be waived pursuant to

16   California Government Code Section 946.6, they must refile and properly notice their motion

17   requesting such a waiver.

18           3.      Telecare's and Sutter's Assertion of Immunity as to Liliya Walsh's State

19                   Law Claims

20           Both Telecare and Sutter argue that certain state-law claims asserted against them should

21   be dismissed because both are immune from civil liability under California Welfare & Institutions

22   Code Section 5278 since they were authorized to detain Liliya Walsh for 72-hour treatment

23   pursuant to California Welfare & Institutions Section 5150.  In particular, Telecare asserts that it

24   is immune from all of the state-law claims asserted against it, which are plaintiffs' third, fourth,

25   sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth cases of action.

26   (ECF No. 21 at 19.)  Sutter asserts that it is entitled to immunity for the third, fourth, fifth, sixth,

27   seventh, and eighth causes of action. (ECF No. 33-1 at 7-10.)  Plaintiffs argue in their opposition

28   to Telecare's motion to dismiss that Telecare is not entitled to immunity under Welfare &

Institutions Code Section 5278 because Telecare was not authorized to hold Liliya Walsh under any law.  (ECF No. 39 at 5.)  Plaintiffs make no such assertion in their opposition to Sutter's motion to dismiss.

California Welfare & Institutions Code Section 5278 provides, in pertinent part:

> Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . not be held either criminally or civilly liable for exercising this authority in accordance with the law.

"Section 5278 was intended to provide immunity for claims based on conduct that is expressly authorized by the LPS Act but would otherwise constitute a civil or criminal wrong," including kidnapping, false imprisonment, and battery.  Jacobs v. Grossmont Hosp., 108 Cal.App. 4th 69, 78 (2003).  Such immunity, which applies both to individuals and entities that make the decision to detain, id. at 76, "extends only to claims based on circumstances that are inherent in an involuntary detention pursuant to 5150," id. at 78.  "[S]ection 5278 does not provide immunity for injuries proximately caused by negligence or other wrongful acts or omissions that may occur during the course of an otherwise valid detention," which includes "liability for injuries proximately caused by . . . negligent or criminal acts or omissions in implementing the terms and conditions of a 72-hour hold."  Id. at 79.

The LPS Act authorizes an individual to "be brought to an appropriate facility for an evaluation if there is "'probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled.'"  MacLellan v. Cnty. of Alameda, 2014 WL 934360 at *5 (N.D. Cal. Mar. 5, 2014) (quoting Cal. Welf. & Inst. Code § 5150).  "If the facility admits such person, he/she may be detained for up to 72 hours for treatment and evaluation."  MacLellan, 2014 WL 934360 at *5 (citing Cal. Welf. & Inst. Code § 5151).  Accordingly, if probable cause was present for the 5150 hold Officer Paxton placed on Liliya Walsh, Telecare and Sutter are not liable as a matter of law for plaintiffs' state-law claims insofar as they are based on circumstances that are inherent in an involuntary detention pursuant to 5150.  See Jacobs, 108 Cal.App. 4th at 76.

////

29

1    Based on the allegations of the FAC, it appears that Officer Paxton had probable cause to

2    issue the 5150 hold.  Probable cause for purposes of the LPS Act requires that the person

3    authorized to detain know of facts "that would lead a person of ordinary care and prudence to

4    believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a

5    danger to himself or herself or is gravely disabled," and, in addition, that the person so authorized

6    "be able to point to specific and articulable facts which, taken together with rational inferences

7    from those facts, reasonably warrant his or her belief or suspicion."  People v. Triplett, 144 Cal.

8    App.3d 283, 288 (1983).  "[P]robable cause means 'fair probability,' not certainty or even a

9    preponderance of the evidence," and is determined based on the totality of the circumstances.  See

10   United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S.

11   213, 246 (1983)); see also United States v. Ventresca, 380 U.S. 102, 107-08 (1965) (noting

12   hearsay may be used to support probable cause where there is a "substantial basis for crediting the

13   hearsay"); Cal. Welf. & Inst.Code § 5256.4(d) (requiring, at certification review hearing,

14   admission of "[a]ll evidence which is relevant to establishing that the person certified is or is not

15   as a result of mental disorder or impairment . . . gravely disabled").

16       Here, the allegations show that Officer Paxton arrived at plaintiffs' home and conducted a

17   welfare check on Liliya Walsh, "who had taken at least 8 Hydrocodone pills" and was

18   unconscious at the time.[8]  (ECF No. 5, Exhibit 1.)  During the welfare check, a note written by

19   Liliya Walsh was located "stating that she loved her family + was sorry"; Officer Paxton

20   interpreted this note to be a suicide note.  (Id.)  Even though plaintiffs allege that Peter Walsh said

21   that Liliya Walsh took the medication to manage pain, and not in an attempt to commit suicide,

22

23   [8] During the hearing, plaintiffs noted that they contested, among other things, the statement made
     in the application authorizing the 5150 hold regarding amount of medication Liliya Walsh
24   ingested.  However, as stated by the court at the hearing, based on the facts currently alleged in
     the FAC, which includes the attached copy of the 5150 application issued by Officer Paxton, it
25   appears that the 5150 hold was based on probable cause.  In the FAC, plaintiffs merely assert the
     legal conclusion that the application lacked probable cause; they do not contest the accuracy of
26   the attached 5150 application or that the circumstances stated in support of the application are
     false. Plaintiffs are again cautioned that if they are seeking to contest the statements made in the
27   5150 application attached to the FAC, they must articulate this contention within the allegations
     of their complaint.
28

30

1    plaintiffs only allege that he made this statement to AMR personnel, not Officer Paxton.  (See
2    ECF No. 5 at ¶ 30.)  The circumstances alleged in the FAC indicate that Officer Paxton's decision
3    to authorize a 72-hour hold on Liliya Walsh was supported by probable cause.  Cf. Palter v. City
4    of Garden Grove, 237 F. App'x 170, 172 (9th Cir. 2007) (finding probable cause present when
5    police officer placed plaintiff on a 5150 hold based in part on the fact that plaintiff "was in
6    possession of pain medication," "had been on the phone with [a friend] in conversations that
7    caused . . . great concern," and "was thought by [the friend] to have been going to his daughter's
8    home to leave a 'goodbye' note").

9         Because the allegations of the FAC, on their face, appear to show that Officer Paxton had
10   probable cause to issue the 5150 hold on Liliya Walsh, Sutter and Telecare are entitled to
11   statutory immunity under Section 5278 insofar as plaintiffs' claims are based on circumstances
12   that are inherent in her involuntary detention at their facilities pursuant to 5150.  However,
13   because plaintiffs' conclusory allegations with respect to each state-law claim against these
14   defendants do not allow to court to accurately determine whether these claims arise from
15   allegations based on circumstances that were inherent to Liliya Walsh's involuntary detention or
16   were based on negligent or other wrongful conduct that may have occurred during the course of
17   the otherwise valid detention, the court cannot determine at this time whether Section 5278
18   provides either defendant with immunity with respect to plaintiffs' state-law claims.[9]
19   Accordingly, the court recommends that plaintiffs' remaining state-law claims against Sutter and
20   Telecare be dismissed with leave to amend so that plaintiffs may better specify whether their
21   state-law claims against these two defendants are for injuries proximately caused by negligence or
22   other wrongful acts or omissions that may have occurred during the course of what appears to be

23

---

24   [9] While Sutter only alleges that it is statutorily immune from plaintiffs' third, fourth, fifth, sixth,
25   seventh, and eighth causes of action, a review of plaintiffs' allegations as to their other state-law
     causes of action against this defendant (claims 10, 11, 12, 13, 14, 15) reveals similar uncertainty
26   as to whether these claims arise out of circumstances that were inherent to Liliya Walsh's
     involuntary detention or were due to further alleged negligent or other wrongful conduct.
27   Accordingly, these remaining state-law claims should also be dismissed with leave to amend so
     that plaintiffs may identify whether these claims are based on negligent or other wrongful conduct
28   not inherent to Liliya Walsh's involuntary detention.

1    an otherwise valid detention based on the allegations of the FAC.

2                    4.      AMR's Claim of Qualified Immunity with Regard to Plaintiffs' State-Law

3                            Claims

4            AMR argues that it is entitled to statutory immunity pursuant to California Health &

5    Safety Code Section 1799.106 with respect to plaintiffs' state-law claims.   Section 1799.106

6    states, in pertinent part:

> [I]n order to encourage the provision of emergency medical services by
> firefighters, police officers or other law enforcement officers, EMT-I, EMT-II,
> EMT-P, or registered nurses, a firefighter, police officer or other law enforcement
> officer, EMT-I, EMT-II, EMT-P, or registered nurse who renders emergency
> medical services at the scene of an emergency or during an emergency air or
> ground ambulance transport shall only be liable in civil damages for acts or
> omissions performed in a grossly negligent manner or acts or omissions not
> performed in good faith.

13   Under California law, emergency medical services "include[ ], but [are] not limited to, first aid

14   and medical services, rescue procedures and transportation, or other related activities necessary to

15   insure the health or safety of a person in imminent peril."  Cal. Health & Safety Code §

16   1799.107(e).  Under the doctrine of respondeat superior, AMR may be held liable only if its

17   employees are found responsible for the state-law tort claims under the applicable standard of

18   care.  See Lathrop v. Healthcare Partners Med. Grp., 114 Cal. App. 4th 1412, 1423 (Ct. App.

19   2004).

20           Here, plaintiffs allege facts in their FAC showing that AMR's paramedics were engaged

21   in emergency services during the entire time they were in contact with plaintiffs.  Plaintiffs'

22   allegations indicate that the paramedics arrived in response to Peter Walsh's called 911 after he

23   found Liliya Walsh unconscious in their home.  When the paramedics arrived at the scene they

24   found an unconscious Liliya Walsh, carried her down the stairs, placed her in an ambulance, and

25   then transported her to the Sutter facility.  Accordingly, pursuant to Section 1799.106, AMR may

26   be found liable only for acts or omissions its employees performed in a grossly negligent manner

27   or without good faith.

28

1        AMR asserts that all of plaintiffs' claims against it should be dismissed because the FAC

2    fails to allege facts showing that its paramedics acted with gross negligence and without good

3    faith.  The court agrees insofar as AMR seeks to dismiss the tort claims plaintiffs allege against it

4    on the basis of a negligence theory.  These claims are plaintiffs' eighth cause of action for

5    negligent infliction of emotional distress and thirteenth claim for medical malpractice.  Plaintiffs

6    fail to allege facts showing that AMR's employees acted with gross negligence in connection

7    with these claims.  In fact, by plaintiffs' own assertions in the FAC, AMR's paramedics allegedly

8    acted with, at most, ordinary negligence when they moved Liliya Walsh downstairs and

9    transported of her to Sutter.  (See ECF No. 5 at ¶ 31.)

10        Plaintiffs argue in their opposition that AMR is not entitled to immunity under Section

11    1799.106 because its paramedics acted with gross negligence and without good faith.  (ECF No.

12    38 at 5.)  However, this argument lacks merit because the allegations in the FAC do not indicate

13    that AMR's employees acted in such a manner.  Rather, plaintiffs' allegations, at most, indicate

14    that AMR's employees acted negligently.  Accordingly, these two claims against AMR should be

15    dismissed with leave to amend.  Plaintiffs are cautioned that any future amendment of these

16    claims must be able to include factual allegations, made on a good faith basis, showing that

17    AMR's employees performed in at least a grossly negligent manner in connection with these

18    claims.

19        However, it appears that Section 1799.106 does not grant AMR immunity with respect to

20    the remainder of the state-law claims alleged against it.  AMR does not cite any authority

21    showing that plaintiffs' claims based on intentional torts or other statutory violations are covered

22    under Section 1799.106.  Based on the plain language of the statute, it appears that, by definition,

23    plaintiff's claims based on intentional torts would rise above the gross negligence standard

24    required by Section 1799.106.  Accordingly, AMR's argument that it is shielded from liability

25    under Section 1799.106 with respect the remainder of plaintiffs' state-law claims is not well-

26    taken.  Nevertheless, for the reasons stated below, plaintiffs fail to allege facts sufficient to state a

27    claim against AMR for any of their remaining causes of action.

28    ////

33

1                      a.       Third and Fourth Causes of Action: False Arrest and False

2                                 Imprisonment

3        As an initial matter, the court notes that plaintiffs' third and fourth causes of action are

4 duplicative. "'False arrest' and 'false imprisonment' are not separate torts, rather "[f]alse arrest is

5 but one way of committing a false imprisonment." Asgari v. City of Los Angeles, 15 Cal.4th

6 744, 752 n.3 (1994). The tort of false imprisonment consists of the "nonconsensual, intentional

7 confinement of a person, without lawful privilege, for an appreciable length of time, however

8 short." Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1994); Shoyoye v. County of Los Angeles,

9 203 Cal.App.4th 947, 962 (2012). A person may be constrained or confined in various ways,

10 including by physical force, threat of force or of arrest, confinement by physical barriers, or by

11 means of any other form of unreasonable duress. Fermino, 7 Cal.4th at 715.

12        Here, plaintiffs fail to allege any facts showing that AMR intentionally confined Liliya

13 Walsh without her consent or lawful privilege to do so. The allegations merely show that AMR

14 paramedics showed up to plaintiffs' house in response to Peter Walsh's 911 call, carried Liliya

15 Walsh to an ambulance, and transported her to Sutter's facility for medical treatment. While

16 plaintiffs assert that AMR detained her without consent or legal justification, the factual

17 allegations do not show that AMR did not have the lawful privilege to detain her during this

18 transport. In fact, the allegations show that AMR transported her after Officer Paxton placed a

19 5150 hold that appears from the allegations to be based on probable cause. Nevertheless, it

20 cannot be adequately determined based on the face of current pleading that further amendment

21 could not cure this defect. Accordingly, plaintiffs' fourth cause of action against AMR should be

22 dismissed with leave to amend.

23                      b.       Eighth Cause of Action: Intentional Infliction of Emotional Distress

24        "The elements of the tort of intentional infliction of emotional distress are: '(1) extreme

25 and outrageous conduct by the defendant with the intention of causing, or reckless disregard of

26 the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

27 emotional distress; and (3) actual and proximate causation of the emotional distress by the

28 defendant's outrageous conduct. . . .'" Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

1    For conduct to be outrageous, it must be so extreme as to exceed all bounds of that usually

2    tolerated in a civilized community.  Davidson v. City of Westminister 32 Cal.3d 197, 209 (1982).

3    The defendant must have engaged in "conduct intended to inflict injury or engaged in with the

4    realization that injury will result."  Id. at 210.

5          Here, plaintiffs merely allege that AMR's "aforementioned acts and/or omissions . . . were

6    intentional and/or reckless . . . was extreme and outrageous . . . and . . . caused Plaintiffs severe

7    emotional distress."  (ECF No. 5 at ¶ 126.)  Plaintiffs do not allege any facts that plausibly show

8    that AMR's paramedics acted with the requisite intent to cause Liliya Walsh severe emotional

9    distress.  Furthermore, even plaintiffs' allegations concerning the unidentified paramedic making

10   offensive comments to Liliya Walsh do not, as a matter of law, show that AMR's employees

11   acted in manner so outrageous as to exceed all bounds of that usually tolerated in a civilized

12   community.  Cf. Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991) (supervisor's yelling

13   while criticizing plaintiff's performance, threatening to throw plaintiff out of the department, and

14   making gestures plaintiff interpreted as threatening was not outrageous conduct).  Accordingly,

15   plaintiffs' claim against AMR for intentional infliction of emotional distress should be dismissed

16   with leave to amend.  Plaintiffs are advised that if they seek to amend their complaint with respect

17   to this claim, they must be able to make a good faith showing that the conduct complained of with

18   respect to AMR constituted something more extreme than that alleged in the FAC.

19                    c.      Ninth Cause of Action: Defamation

20         Plaintiffs allege that AMR published false statements to an unspecified third party about

21   Liliya Walsh being a danger to herself and others.  This allegation is insufficient to state a

22   defamation claim against AMR.  Plaintiffs' factual allegations do not show that AMR or its

23   employees ever made a statement to a third party, or even made the statement that Liliya Walsh

24   was a danger to herself and others.  It would appear from the allegations that it was Officer

25   Paxton of the Rocklin Police Department that made this alleged statement.  Accordingly, this

26   claim should be dismissed, but with leave to amend because the court cannot determine from the

27   current record that further amendment could not adequately address these deficiencies.

28   ////

1             d.      Tenth Cause of Action: Violations of the LPS Act

2        Plaintiffs allege against AMR violations of unspecified sections of the LPS Act.  They

3  allege that "Liliya Walsh repeatedly requested treatment and was repeatedly denied or wrongfully

4  treated by . . . AMR."  (ECF No. 5 at ¶ 138.)  However, plaintiffs allege nothing beyond this

5  conclusory statement to show that AMR engaged in this alleged conduct.  The FAC does not even

6  contain factual allegations showing that Liliya Walsh requested and was denied treatment by

7  AMR at any time during which she was in AMR's care.  Furthermore, plaintiffs do not specify

8  which section or sections of the LPS Act upon which they base their claim against AMR.

9  Therefore, this claim against AMR should be dismissed.  However, because the court cannot

10  determine at this time that amendment would be futile, dismissal should be with leave to amend.

11             e.      Thirteenth Cause of Action: Misrepresentation

12        Plaintiffs allege that AMR made an intentional misrepresentation to plaintiffs regarding

13  Liliya Walsh's medical condition with the intent to induce plaintiffs' reliance, which caused

14  injury to plaintiffs.  (ECF No. 5 at ¶¶ 148-49.)  Liberally construed, it appears that plaintiffs

15  attempt to state a claim for fraud.  As noted above, "[i]n alleging fraud or mistake, a party must

16  state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

17  Furthermore, "[t]o state a claim of fraudulent conduct, which carries substantial reputational

18  costs, plaintiffs must provide each and every defendant with enough information to enable them

19  'to know what misrepresentations are attributable to them and what fraudulent conduct they are

20  charged with.'"  Pegasus Holdings v. Veterinary Centers of America, Inc., 38 F.Supp.2d 1158,

21  1163 (C.D. Cal. 1998) (quoting In re Worlds of Wonder Sec. Litig., 694 F.Supp. 1427, 1433

22  (N.D. Cal. 1988)).  As stated earlier, plaintiffs fail to include, among other things, any allegations

23  identifying which statement or statements they are claiming were fraudulent or that plaintiffs

24  justifiably relied on those statements.   Here, plaintiffs do not even identify which conduct they

25  are claiming was fraudulent, let alone the who, what, when, when and how of the alleged

26  misconduct.  Furthermore, in order to state a cognizable fraud claim, plaintiffs need to allege facts

27  showing that they justifiably relied on the fraudulent statement to their detriment.  Nevertheless,

28  based on the current record, the court cannot properly conclude that plaintiffs would not be able

1    to amend their complaint to cure these defects.  Accordingly, this cause of action should be

2    dismissed with leave to amend.

3        For the reasons stated above, plaintiffs' FAC fails to allege a cognizable state-law claim

4    against AMR.  Therefore, AMR's motion to dismiss should be granted with respect to these

5    claims and plaintiffs should be granted leave to amend these claims to the extent outlined above.[10]

6    IV.    Conclusion

7        For the foregoing reasons, defendants' motions to dismiss should be granted and

8    plaintiffs' FAC should be dismissed without leave to amend to the extent outlined above.

9    Nevertheless, in light of plaintiffs' pro se status, the fact that plaintiffs have only once amended

10   their complaint as a matter of right prior to serving defendants, and because it appears at least

11   possible that plaintiffs can correct the identified defects with respect to certain claims described

12   above, the court should grant plaintiffs leave to file an amended complaint with respect to those

13   claims.  However, plaintiffs are cautioned that if they elect to file a second amended complaint,

14   they must articulate their claims for which they have been granted leave to amend through factual

15   allegations that address the deficiencies outlined above.  More importantly, plaintiffs must have a

16   good faith basis for making such allegations.  See Fed. R. Civ. P. 11(b).  If after reviewing these

17   findings and recommendations plaintiffs determine that they cannot in good faith allege facts that

18   would address the deficiencies in their claims, then they may wish to omit such claims from a

19   future amended complaint as failure to make allegations on a good faith basis may be grounds for

20   the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  See Fed.

21   R. Civ. P. 11(c).

22       If plaintiffs decide to file a second amended complaint, it shall be captioned "Second

23   Amended Complaint" and shall not exceed 30 pages, including attachments.  Furthermore,

24   _____

25   [10] AMR also argues that plaintiffs have improperly requested punitive damages against it because
     California Code of Civil Procedure Section 425.13 does not allow plaintiffs to plead state-law

26   punitive damages against health care providers unless the court enters an order allowing them to
     make such a request for relief.  See Cal. Civ. Proc. Code § 425.13.  However, because it is

27   recommended that defendants' motions to dismiss be granted on the basis that plaintiffs fail to
     adequately allege their substantive causes of action, the court declines to address this contention

28   at this point in time.

plaintiffs shall clearly delineate the following in their second amended complaint: (1) whether a particular claim is being asserted by Peter Walsh or Liliya Walsh; (2) which defendant or defendants each claim is being asserted against; and (3) the alleged conduct upon which each claim is based.  Finally, plaintiffs shall attach to their second amended complaint copies of the claims Liliya Walsh allegedly submitted to Placer County and Rocklin Police Department in an attempt to satisfy the CTCA as well as copies of any correspondence between her and these parties regarding those two claims.

Plaintiffs are informed that the court cannot refer to a prior complaint, brief, exhibits, or other filings to make plaintiffs' second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  Thus, once the second amended complaint is filed, it supersedes the first amended complaint, which no longer serves any function in the case.

Plaintiffs are further informed that they are not required to file a second amended complaint.  If plaintiffs determine that they do not wish to pursue the action at this juncture, they may instead file a request for voluntary dismissal of the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions to dismiss (ECF Nos. 8, 17, 18, 21, 33) be granted to the extent outlined below.

2. **Peter Walsh's** claims pursuant to 42 U.S.C. § 1983 (causes of action 1 and 2) be dismissed ***without* leave to amend** as to all defendants.

3. **Liliya Walsh's** claims pursuant to 42 U.S.C. § 1983 (causes of action 1 and 2) be dismissed ***without* leave to amend** insofar as they are alleged against Rocklin Police Department.

4. **Liliya Walsh's** claims pursuant to 42 U.S.C. § 1983 (causes of action 1 and 2) be dismissed ***with* leave to amend** insofar as they are alleged against Sutter, Telecare and Placer County.

5. **Both plaintiffs'** requests for punitive damages against defendants Rocklin Police Department and Placer County be dismissed ***without* leave to amend.**

6. The following state-law causes of action be dismissed ***without* leave to amend** as to all defendants insofar as they are alleged by **Peter Walsh**: false arrest/false imprisonment (claims 3 and 4), battery (claim 5), assault (claim 6), defamation (claim 9), medical malpractice (claim 11), and the three causes of action for violations of the LPS Act (claims 10, 14, 15).

7. All state-law causes of action alleged by **Peter Walsh** against Rocklin Police Department and Placer County be dismissed ***without* leave to amend.**

8. **Peter Walsh's** seventh (intentional infliction of emotional distress), eighth (negligent infliction of emotional distress), and thirteenth ("misrepresentation") causes of action be dismissed ***with* leave to amend** insofar as those claims are asserted against Sutter, Telecare and AMR.

9. **Both plaintiffs'** twelfth cause of action for "conspiracy" be dismissed ***without* leave to amend** with respect to all defendants insofar as plaintiffs allege the existence of a conspiracy as a standalone cause of action.

10. **Liliya Walsh's** state-law claims against Placer County (causes of action 7, 8 10, 13, 14, 15) be dismissed ***with* leave to amend.**

11. **Liliya Walsh's** state-law claims against Rocklin Police Department (causes of action 3, 4, 7, 8, 9, 10) be dismissed ***with* leave to amend.**

12. **Liliya Walsh's** state-law claims against Sutter (causes of action 3, 4, 5, 6, 7, 8 10, 11, 13, 14, 15) be dismissed ***with* leave to amend.**

13. **Liliya Walsh's** state-law claims against Telecare (causes of action 3, 4, 6, 7, 8 10, 11, 13, 14, 15) be dismissed ***with* leave to amend.**

14. **Liliya Walsh's** state-law claims against AMR (causes of action 3, 4, 7, 8, 9, 10, 11, 13, 14, 15) be dismissed ***with* leave to amend.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

39

1  shall be served on all parties and filed with the court within fourteen (14) days after service of the

2  objections.  The parties are advised that failure to file objections within the specified time may

3  waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

4  Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

5       IT IS SO RECOMMENDED.

6  Dated:  May 20, 2014

7

8  _____
   KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28