1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LILIYA WALSH, et al.,                    No.  2:13-cv-2077 MCE KJN PS

12              Plaintiffs,

13        v.                                  ORDER AND FINDINGS AND
                                              RECOMMENDATIONS
14   AMD SACRAMENTO, et al.,

15              Defendants.

16

17        Presently before the court are defendants' motions to dismiss, all of which seek to dismiss

18   plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for

19   failure to state a claim upon which relief can be granted.  (ECF Nos. 50, 51, 53, 57, 58.)  Plaintiffs

20   filed oppositions to all five motions to dismiss.  (ECF Nos. 62, 63, 64, 65, 66.)  All defendants

21   filed replies in support of their respective motions.  (ECF Nos. 67, 68, 71, 72, 73.)

22        Also before the court is defendant Rocklin Police Department's motion for sanctions

23   pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent

24   authority.  (ECF No. 60.)  Plaintiffs filed an opposition to this motion, and Rocklin Police

25   Department filed a reply.  (ECF Nos. 74, 75.)

26        The court heard these matters on its September 4, 2014 law and motion calendar.

27   Plaintiffs Liliya Walsh and Peter Walsh appeared on behalf of themselves. Attorney Alison

28   Vitacolonna appeared on behalf of defendants Placer County and Telecare Placer Psychiatric

                                              1

1  Health Facility ("Telecare").  Attorney Andrew Caulfield appeared on behalf of defendants

2  Rocklin Police Department and Jeff Paxton.  Attorney Scott Kanter appeared telephonically on

3  behalf of defendant American Medical Response ("AMR").  Attorney Sampson Elsbernd

4  appeared on behalf of defendant Sutter Roseville Medical Center ("Sutter").

5          The undersigned has fully considered the parties' briefs, the parties' oral arguments, and

6  appropriate portions of the record.  For the reasons that follow, it is recommended that

7  defendants' motions to dismiss be granted.  Furthermore, it is ordered that defendant Rocklin

8  Police Department's motion for sanctions is denied without prejudice.

9  I.      Background

10         The background facts are taken from plaintiffs' Second Amended Complaint and

11  documents incorporated into the Second Amended Complaint by reference.[1]  (See ECF No. 48.)

12  ---

[1] The "incorporation by reference" doctrine "permits [a court] to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).  The Ninth Circuit Court of Appeals has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  Knievel, 393 F.3d at 1076;  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity); see also Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002) (taking into account newspaper article containing allegedly defamatory statement under the "incorporation by reference" doctrine where it was "central" to plaintiff's claim, defendant attached it to the motion for judgment on the pleadings, and plaintiff did not contest its authenticity).

Here, plaintiffs incorporate two documents into their second amended complaint by reference. First, they incorporate a handwritten note purportedly drafted by Liliya Walsh prior to falling unconscious that states the following: "I love you all[.]  Sorry for everything.  I can't deal with this pain.  Codeine is not good for me.  It makes me [. . .] I had @ 8 tablets."  (ECF No. 60-1, Exhibit A.)  This document is attached as "Exhibit A" to Rocklin Police Department's motion to dismiss and is referred to by the second amended complaint through the following allegations:

"While waiting for her husband, Liliya suffered an adverse reaction to the pain medication and she wrote a note to let her husband know that codeine was not good for her . . . Contrary to Paxton's allegation that a suicide note was located, the note that he likely refers to did not mention suicide or attempt to commit suicide in any way.  The note instructed her husband that "codeine is not good for me."

(ECF No. 48 at ¶¶ 27, 43.)  During the hearing on defendants' motions, plaintiffs stated that they do not dispute that this is the note referred to in their second amended complaint.

On or about September 21, 2012, plaintiff Liliya Walsh began to suffer from pain as a result of an infection that caused swelling in her jaw and throat.  (Id. at ¶¶ 21, 23.)  Liliya sought medical treatment for this condition from Dr. Levin.  (Id. at ¶ 21.)  On October 1, 2012, Liliya was prescribed Clindamycin HCL and hydrocodone-acetaminophen for the infection.  (Id. at ¶ 22.)  On October 5, 2012, while Liliya was at home, she suffered an adverse reaction to the prescribed pain medication.  (Id. at ¶ 27.)  While Liliya was having this reaction, she wrote a note to her husband, plaintiff Peter Walsh, "to let [him] know that codeine was not good for her."  (Id.)  Specifically, she wrote the following:  "I love you all[.]  Sorry for everything.  I can't deal with this pain.  Codeine is not good for me.  It makes me [. . .] I had @ 8 tablets."  (ECF No. 53-1, Exhibit A.)  When Peter came home, he found Liliya in their bedroom unable to move.  (ECF No. 48 at ¶ 28.)  Peter then called the doctor, who advised that he call 911.  (Id.)

Around 5:00 p.m. that evening, paramedics, who were employees of defendant AMR, arrived at plaintiffs' home to transport Liliya to Sutter Roseville Medical Center.  (Id. at ¶ 29.)  One of the paramedics asked Peter whether Liliya had attempted to commit suicide, Peter replied by saying, "No . . . she was trying to manage the pain."  (Id.)  Peter explained to the paramedics about Liliya's symptoms, the pain she was trying to manage, and that the medication she was prescribed was not successful at managing that pain.  (Id.)

When the paramedics arrived on the scene, Liliya was unable to walk down the stairs of plaintiffs' home and required the paramedics' assistance getting downstairs.  (Id. at ¶ 30.)  Plaintiffs allege that the paramedics "negligently carried [Liliya] down [the stairs] without the use

---

Second, plaintiffs incorporate by reference the 5150 application authored by Officer Paxton that was used to authorize Liliya Walsh's 72-hour detention.  This document is attached as "Exhibit A" to AMR's motion to dismiss.  (ECF No.  Furthermore, because plaintiffs attached this document as "Exhibit 1" to both their original and first amended complaints in this action (see ECF Nos. 1, 5), this document is also judicially noticeable as a part of those prior filings.  See Coats v. McDonald, 2010 WL 2991716, at *2 (E.D. Cal. July 29, 2010) (noting "[a] court may take judicial notice of court records" and taking judicial notice of the plaintiff's original complaint); Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  During the hearing on defendants' motions, plaintiffs stated that they do not dispute that that the application attached as "Exhibit A" to AMR's motion is the application referred to in their second amended complaint.

1  of a stretcher." (Id.)  Plaintiffs further allege that the paramedics made "highly offensive and

2  rude jokes in the presence of [plaintiffs]." (Id.)  In particular, plaintiffs allege that the paramedics

3  referred to other people they knew who could take more medication than Liliya did without

4  suffering an adverse reaction and "intimated that alcohol or other drugs were involved to create

5  [Liliya's] symptoms." (Id.)

6      After Liliya was placed in the ambulance, a paramedic began to ask her questions

7  regarding whether she had combined alcohol with her medication. (Id.)  Liliya was unable to

8  verbally communicate her answers, which caused the paramedic to become frustrated with her.

9  (Id. at ¶¶ 30-31.)  The paramedic began to yell "profusely" at Liliya and made negative comments

10  towards her "with implications that she was a bad mother" in the presence of her husband,

11  children, and neighbors. (Id. at ¶¶ 31, 33.)  During this questioning, the paramedic yelled at

12  Liliya, "so you want a 5150?" which Liliya perceived as a threat. (Id. at ¶¶ 34-35.)  During this

13  time, Lilya overheard an AMR paramedic speaking to someone she believed was from the

14  Rocklin Police Department about placing her on a 5150 hold. (Id. at ¶ 36.)

15      Officers from the Rocklin Police Department were dispatched to plaintiffs' house to

16  conduct a welfare check on Liliya. (ECF No. 5, Exhibit 1 (Application for 72-hour Detention for

17  Evaluation and Treatment of Liliya Walsh).)  Officer Jeff Paxton of the Rocklin Police

18  Department authorized an application to place Liliya into an involuntary 72-hour detention for

19  evaluation and treatment pursuant to California Welfare and Institutions Code Section 5150. (Id.)

20  The authorized application for the 5150 hold states that Liliya was found unconscious, that she

21  had taken at least eight Hydrocodone pills, and that a "suicide note" was located "stating that

22  [Liliya] loved her family + was sorry." (Id.)  This application was signed by Officer Paxton and

23  directed that Liliya be held for 72 hours at a "designated mental health facility" for treatment and

24  evaluation because the circumstances indicated that she was a danger to herself and others. (Id.)

25  Plaintiffs allege that "Liliya was never read or provided the 5150 'Miranda rights' by Officer

26  Paxton." (ECF No. 48 at ¶97.)  Plaintiffs also contend that the "suicide note" that the 5150

27  application referred to was the note written by Liliya "instruct[ing] her husband that 'codeine is

28  not good for me.'" (Id. at ¶ 40.)

4

Liliya was transported by AMR employees in an ambulance to Sutter Roseville Medical Center.  (Id. at ¶ 37.)  During her time there, Liliya requested information from the staff regarding her rights as a patient, contact information for a patient rights advocate, and the application and authority upon which the 5150 hold was placed on her.  (Id. at ¶¶ 38-40.)  She was initially refused this information, but was later supplied with a fact sheet regarding 5150 holds, a sheet explaining patients' rights and responsibilities, and phone numbers of local patient rights advocates; however, the phone numbers she was provided were either incorrect or for advocates who were not available at that time.  (Id. at ¶ 39.)

Plaintiffs allege that an unidentified nurse at Sutter "paid no attention to [Liliya's] medical needs or concerns" when the nurse stated that Liliya had no infection after Liliya requested treatment for her medical condition and "show[ed] the nurse the discharge excreting from [her] gums and salivary ducts."  (Id. at ¶ 44.)

During the late night on October 5, 2012, and early morning on October 6, 2012, two unknown women came to Liliya and one of them told her that she would need to undergo surgery for her condition.  (Id. at ¶ 45.)  Liliya requested that both women provide their respective identities, employers, and positions; however, Lilya was only told by one of the women "that she worked for Placer County Medical Hospital."  (Id.)

On October 6, 2012, another woman came to Liliya representing that she worked for Placer County Mental Hospital and that she was authorized to talk to Liliya.  (Id. at ¶ 45.)  The woman told Liliya that Liliya had no choice but to speak with her or be transported to a psychiatric facility.  (Id.)  Liliya's family had made arrangements for her to obtain medical attention elsewhere, but she was not permitted to leave emergency care to obtain care elsewhere. (Id. at ¶ 46.)  Liliya also suffered an adverse reaction to the iodine used for her CT scan, causing nausea and uncontrollable vomiting.  (Id.)  Liliya requested a shower, but Sutter staff denied her request on the basis that there were no showers for patients' use in the emergency room and told her that "they would not accommodate her in any manner."  (Id.)

////

////

5

1    Around 4:00 p.m. on October 6, 2012, an unidentified Sutter nurse told Liliya and Peter

2    that Liliya would be transported to Heritage Hospital in the next hour and that Liliya had no

3    choice but to go with the supplied transport.  (Id. at ¶ 47.)  Plaintiffs allege that "[t]he Sutter nurse

4    assaulted [Liliya] with psychiatric medication to force compliance to go while Liliya was trying

5    to reach a patient rights advocate on the phone."  (Id.)  The nurse "reluctantly backed off" after

6    Liliya asked why the nurse was forcing medication upon her.  (Id.)  Peter "was sitting right next

7    to Liliya and witnessed the entire event."  (Id.)

8    Sutter staff promised plaintiffs that upon arrival at Heritage Hospital, Liliya would

9    receive an evaluation by a psychiatrist to determine whether she would be permitted to go home,

10   that such an evaluation should only take a few hours, and that she should be able to go home later

11   that night.  (Id. at ¶ 48.)  Based on this representation, plaintiffs complied.  (Id.)  A few minutes

12   prior to Liliya's departure, a Sutter nurse confirmed that Liliya would be going to Heritage

13   Hospital and gave Peter an address and printed directions to that facility.  (Id.)

14   During her transport, Liliya noticed that she was not heading towards Heritage Hospital

15   and asked the ambulance driver why they were taking a different route; the driver responded by

16   stating that the instructions were to take Liliya to Telecare Placer Psychiatric Health Facility.  (Id.

17   at ¶ 49.)  Upon learning this information, Liliya "feared for her life and well-being, and felt like

18   she was being kidnapped."  (Id.)

19   Upon arriving at Telecare, Liliya was placed in a small, isolated room with no furniture.

20   (Id. at ¶¶ 50-51.)  During her stay at Telecare, Liliya met with a Telecare nurse named Carol.  (Id.

21   at ¶ 52.)  Carol generally treated Liliya unprofessionally and, on one occasion, after Liliya asked

22   when she would be able to see a psychiatrist for an evaluation, "Carol responded with anger and

23   aggressively yelled in [Liliya's] face."  (Id.)  Plaintiffs allege that "Carol was so out of control

24   that she was spitting in [Liliya's] face."  (Id.)  When Liliya asked for certain information

25   regarding her rights as a patient, Carol refused to provide it.  (Id. at ¶ 53, 56.)  "There was no

26   psychiatrist present at Telecare to conduct an evaluation on that Saturday" and when Liliya

27   requested a list of other psychiatrists so that she could receive a more expedient evaluation, Carol

28   refused to provide her with any such information.  (Id. at ¶ 54.)  Liliya also repeatedly requested

6

that Carol allow her to call Peter to inform him of her location and for Telecare's address.  (Id. at ¶ 57.)  Carol eventually allowed plaintiff to call Peter, but refused to provide Telecare's address.  (Id.)  While Liliya was talking with Peter on the phone, she told him about Carol's actions, which caused Carol to force Liliya off of the phone and to deny Liliya later use of the phone.  (Id. at ¶ 58.)

On October 7, 2012, at approximately 4:00 p.m., Liliya received an evaluation from Dr. Sargin.  (Id. at ¶ 62.)  "Upon conclusion of the evaluation, Dr. Sargin stated that he didn't see any basis for [Liliya's] detention and said that he was releasing her to go home."  (Id.)  Following this evaluation, plaintiff inquired with Telecare staff regarding her release, but was "told that Dr. Sargin was gone for the day" and "that no arrangements had been made for her release."  (Id. at ¶ 63.)  Liliya was finally released from Telecare and from the 5150 hold on the afternoon of October 8, 2012.  (Id. at ¶ 64.)

Plaintiffs allege that the above events caused Liliya to suffer from "overwhelming mental, emotional, and physical suffering."  (Id. at ¶ 66.)  Plaintiffs further allege that Peter "suffered emotionally and physically, with troubles sleeping having to deal with his wife's involuntary confinement and panic he experienced when his wife disappeared for a period of several hours . . ., and when she was being forced with a psychotic medication . . . ."  (Id. at ¶ 67.)

Based on these factual allegations, plaintiffs assert the following eleven causes of action against defendants:  (1) Liliya Walsh's Fourteenth Amendment procedural due process claim brought pursuant to 42 U.S.C. § 1983 against Sutter, Telecare, Jeff Paxton, and Placer County; (2) Liliya Walsh's claim for false imprisonment against Sutter and Telecare; (3) Liliya Walsh's claim for battery against Sutter and Telecare; (4) Liliya Walsh's claim for assault against Sutter and Telecare; (5) Liliya Walsh's claim for negligence against AMR; (6) Liliya Walsh's and Peter Walsh's claims for intentional infliction of emotional distress against Rocklin Police Department, Sutter, Telecare, and Placer County; (7) Liliya Walsh's and Peter Walsh's claims for negligent infliction of emotional distress against Rocklin Police Department, Sutter, Telecare, and Placer County; (8) Liliya Walsh's claim for defamation against AMR, Rocklin Police Department, Telecare, and Sutter; (9) Liliya Walsh's claim for medical malpractice against Sutter, Telecare,

7

1   and Placer County; (10) Liliya Walsh's claim for violations of California Welfare & Institutions

2   Code section 5325 against Sutter, Placer County, and Telecare; and (11) Liliya Walsh's claim for

3   violations of California Welfare & Institutions Code section 5326.2 against Sutter, Placer County,

4   and Telecare.

5           Plaintiffs request relief in the form of compensatory and punitive damages against all

6   defendants.  Plaintiffs further request an order requiring defendants to remove "any and all

7   references to suicide, suicide [sic] thoughts, attempts to harm herself, etc. from Liliya Walsh's

8   medical records."  (Id. at 22.)  Finally plaintiffs request the following injunctive relief:  (1) "an

9   order compelling defendants to designate funds for patient rights advocacy and to make patient

10  rights advocacy available 24 hours a day, 7 days a week"; (2) an order compelling Rocklin Police

11  Department to undergo "5150" training; (3) "an order compelling . . . Telecare and Sutter to

12  provide adequate training to its employees"; (4) "an order compelling . . . Sutter to provide

13  independent full-time advocacy 24-hours a day/7 days a week"; and (5) an order compelling

14  AMR to provide training to all of its paramedics that includes sensitivity training.  (Id. at 22-23.)

15  II.     Legal Standard

16          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

17  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

18  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

19  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

20  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

21  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

22  a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

23  is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

24  Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

25  factual content that allows the court to draw the reasonable inference that the defendant is liable

26  for the misconduct alleged."  Id.

27  ////

28  ////

1    In considering a motion to dismiss for failure to state a claim, the court accepts all of the

2    facts alleged in the complaint as true and construes them in the light most favorable to the

3    plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not,

4    however, required to accept as true conclusory allegations that are contradicted by documents

5    referred to in the complaint, and [the court does] not necessarily assume the truth of legal

6    conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at

7    1071. The court must construe a pro se pleading liberally to determine if it states a claim and,

8    prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

9    to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v.

10   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

11   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

12   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

13   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

14   evaluating them under the standard announced in Iqbal).

15   In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

16   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

17   matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506

18   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not

19   consider a memorandum in opposition to a defendant's motion to dismiss to determine the

20   propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

21   1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

22   whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

23   2003).

24   III.    Federal Question Requirement

25   A federal district court generally has original jurisdiction over a civil action when: (1) a

26   federal question is presented in an action "arising under the Constitution, laws, or treaties of the

27   United States" or (2) there is complete diversity of citizenship and the amount in controversy

28   exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). District courts have diversity jurisdiction

9

1   over "all civil actions where the matter in controversy exceeds the sum or value of $75,000,

2   exclusive of interest and costs," and the action is between:  "(1) citizens of different States; (2)

3   citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in

4   which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as

5   plaintiff and citizens of a State or of different States."  28 U.S.C. § 1332; see also Geographic

6   Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010).

7          Here, diversity of citizenship jurisdiction is not present because both plaintiffs and at least

8   one defendant reside in a single state, California.[2] Thus plaintiffs must raise at least one claim

9   against defendants giving rise to a federal question for this court to have subject matter

10  jurisdiction over this case.  See 28 U.S.C. § 1367; Wayne v. DHL Worldwide Express, 294 F.3d

11  1179, 1183, n.2 (9th Cir. 2002) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)).

12  IV.    Plaintiffs' Addition of Officer Jeff Paxton as a New Defendant to the Second Amended

13         Complaint

14         As an initial matter, plaintiffs have named Jeff Paxton, the officer from the Rocklin Police

15  Department who allegedly drafted the application authorizing Liliya Walsh's psychiatric hold

16  pursuant to California Welfare & Institutions Code section 5150, in the second amended

17  complaint as a new defendant to Liliya Walsh's claim under 42 U.S.C. § 1983 despite the fact

18  that plaintiffs have not yet obtained leave of court to add Jeff Paxton as a defendant.  Perhaps in

19  recognition of the fact that they have not obtained leave to add Jeff Paxton as a defendant,

20  plaintiffs also filed a pleading styled as a "request for court clarification or in alternative, . . .

21  motion to add defendant Jeff Paxton pursuant to FRCP 20."  (ECF No. 69.)  Therein, plaintiffs

22  state that they were under the impression that the court granted them leave to amend their

23  complaint to add additional parties in connection with its order granting defendants' motions to

24  dismiss the first amended complaint.  Plaintiffs request that the court clarify whether it actually

25  did grant them leave to make such an amendment.  The court clarifies that it did not grant

26  _____

27  [2] Plaintiffs allege in the second amended complaint that they are individuals residing in Placer County, California.  Plaintiffs further allege that defendants Placer County and Rocklin Police Department are both local government entities located in California.

28

10

1    plaintiffs leave to amend their first amended complaint to add Jeff Paxton as a defendant.

2            Plaintiffs also request in the alternative that the court grant them leave to add Jeff Paxton

3    as a defendant.  In their motion, plaintiffs claim that they "filed their Second Amended Complaint

4    . . . naming Jeff Paxton . . . as Doe 1 Defendant after the hearing on May 15, 2014."  (ECF No. 69

5    at 2.)  Construed liberally, it appears that plaintiffs seek to substitute Jeff Paxton as a named

6    defendant in this action in place of the "Doe 1" defendant named in their prior complaints

7    pursuant to California Code of Civil Procedure section 474.[3]

8            As an initial matter, this motion is defectively filed under the Local Rules because

9    plaintiffs have failed to notice it for a hearing date.  See E.D. L.R. 230(b).  Accordingly, this

10   motion is denied as procedurally improper.

11           Plaintiffs' request is also defective on the merits because plaintiffs' prior complaints show

12   that they inappropriately named Jeff Paxton as a "Doe" defendant.  "As a general rule, the use of

13   'John Doe' to identify a defendant is not favored [in federal court]."  Gillespie v. Civiletti, 629

14   F.2d 637, 642 (9th Cir. 1980).  However, when a plaintiff does use such a designation to identify

15   a defendant in his or her complaint, "it is necessary that the plaintiff actually be ignorant of the

16   name or identity of the fictitiously named defendant at the time the complaint is filed."  Optical

17   Surplus, Inc. v. Superior Court, 228 Cal. App. 3d 776, 783 (1991); Huskey v. Ahlin, 2011 WL

18   5838121, at *6 (E.D. Cal. Nov. 21, 2011) (quoting Ingram v. Superior Court, 98 Cal.App.3d 483,

19   492 (1979)) ("A 'party may only avail himself of the use of naming Doe defendants as parties

20   when the true facts and identities are genuinely unknown to the plaintiff.'").

21           Here, plaintiffs cannot establish that they were ignorant of Jeff Paxton at the time they

22   filed their original complaint.  First, although plaintiffs' initial complaint failed to include Jeff

23   Paxton as a defendant, the original complaint and its attachments refer to Jeff Paxton by name and

24
     ────────────────────
25   [3] California Code of Civil Procedure § 474 states in pertinent part:

26           When the plaintiff is ignorant of the name of a defendant, he must state that fact in
             the complaint, or the affidavit if the action is commenced by affidavit, and such
27           defendant may be designated in any pleading or proceeding by any name, and
             when his true name is discovered, the pleading or proceeding must be amended
28           accordingly . . . .

allege that he engaged in the same conduct that is alleged against him in the second amended

complaint.  (ECF No. 1 at 11, 62.)  Plaintiffs continued to refer to Jeff Paxton by name in their

first amended complaint that was filed on February 6, 2014, and continued to allege that he

engaged in the same conduct alleged in both the original complaint, despite the fact that they

again did not name him as a defendant and continued to name the "Doe 1" defendant.  (See ECF

No. 5.)  Finally, plaintiffs admitted during the hearing on defendants' motions to dismiss that they

were aware of Jeff Paxton's name and involvement in the alleged events at the time they filed

their previous pleadings.

Jeff Paxton was not a defendant for whom plaintiffs could not uncover his identity without

the benefit of discovery.  Plaintiffs were not delayed in discovering Paxton's identity.  Instead,

plaintiffs merely chose not to name him in their earlier pleadings.  Accordingly, plaintiffs cannot

now have him substituted in as a defendant on the basis that he is the "Doe 1" defendant named in

plaintiffs' prior complaints.

Furthermore, plaintiffs' failed to serve Officer Paxton within the 120 days of filing their

original complaint, wherein plaintiffs named Jeff Paxton as the "Doe 1" defendant, which was

required by Federal Rule of Civil Procedure 4(m).  When a complaint alleges claims against

"Doe" defendants, those "Doe defendants must be identified and served within 120 days of the

commencement of the action against them."  Wilson v. City of Merced, 2009 WL 331417, at *7

(E.D. Cal. Feb. 10, 2009) (citing Aviles v. Village of Bedford Park, 160 F.R.D. 565, 567 (N.D.

Ill. 1995)); see also W. v. Fed. Bureau of Prisons, 2012 WL 893779, at *4 (E.D. Cal. Mar. 15,

2012) (dismissing claims against Doe defendant for "[p]laintiff's failure to identify and serve Doe

Defendant . . . within the 120-day period prescribed by Rule 4(m) of the Federal Rules of Civil

Procedure.").

Here, plaintiffs filed their original complaint on October 7, 2013, which asserted claims

against "Does 1-200."  (ECF No. 1.)  Plaintiffs knew Jeff Paxton's identity, yet they did not

identify Jeff Paxton as the "Doe 1" defendant named in the complaint and serve him within 120

days of that date.  "If a defendant is not served within 120 days after the complaint is filed, the

court--on motion or on its own after notice to the plaintiff--must dismiss the action without

1  prejudice against that defendant or order that service be made within a specified time." Fed. R.

2  Civ. P. 4(m).  Because it has been roughly 11 months since plaintiffs filed their initial complaint

3  naming the "Doe 1" defendant and plaintiffs have not formally identified and served Jeff Paxton

4  with process in that time, Jeff Paxton should be dismissed from this action without prejudice

5  pursuant to Federal Rule of Civil Procedure 4(m).[4]

6  V.      Defendants' Motions to Dismiss

7          A.      Liliya Walsh's Section 1983 Claims

8          To plead a cognizable claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts

9  from which it may be inferred that (1) he or she was deprived of a federal right, and (2) a person

10  who committed the alleged violation acted under the color of state law.  West v. Atkins, 487 U.S.

11  42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).  Additionally, a plaintiff

12  must allege that he or she suffered a specific injury and show a causal relationship between the

13  defendant's conduct and the injury suffered.  See Rizzo v. Goode, 423 U.S. 362, 371-72 (1976).

14  For purposes of section 1983, the term "persons" encompasses state and local officials sued in

15  their individual capacities, private individuals, and entities which act under the color of state law

16  and local governmental entities.  Vance v. Cnty. of Santa Clara, 928 F.Supp. 993, 995-96 (N.D.

17  Cal. 1996).

18          In the second amended complaint, Liliya Walsh contends that her section 1983 claim

19  against Sutter, Telecare, Jeff Paxton,[5] and Placer County is premised on a violation of her

20  Fourteenth Amendment rights.  (ECF No. 48 at ¶ 100.)  However, like the first amended

21  complaint, the second amended complaint does not specify which Fourteenth Amendment right or

22  _____

23  [4] Plaintiffs also name "Does 2 through 10, inclusive" as defendants to each of their causes of action asserted in the second amended complaint.  Plaintiffs also named these "Doe" defendants in their original complaint.  Because plaintiffs have not identified and served any of these defendants within the roughly 11 months since the commencement of this action, these "Doe" defendants should also be dismissed without prejudice for plaintiffs' failure to comply with Rule 4(m).  W. v. Fed. Bureau of Prisons, 2012 WL 893779, at *4 (E.D. Cal. Mar. 15, 2012) (unreported) (dismissing claims against Doe defendant for "[p]laintiff's failure to identify and serve Doe Defendant . . . within the 120-day period prescribed by Rule 4(m) of the Federal Rules of Civil Procedure.").

27  [5] The court does not address Liliya Walsh's Section 1983 claim as to Jeff Paxton because he should be dismissed from this action due to plaintiffs' failure to timely identify him as the "Doe 1" defendant and effect service of process on him.

13

1   rights she seeks to vindicate through her section 1983 claim.  Nevertheless, based on a liberal

2   construction of the allegations in the second amended complaint associated with this claim, it

3   appears that Liliya Walsh attempts to allege a procedural due process claim based on allegations

4   that she was wrongfully deprived from receiving a more expedient psychiatric assessment and

5   review of the decision to place her on a 5150 hold and was not provided additional pre-detention

6   process.  Defendants Sutter, Telecare, and Placer County argue that this claim should be

7   dismissed because the Due Process Clause of the Fourteenth Amendment does not require such a

8   review or pre-deprivation process in connection with a 72-hour detainment pursuant to section

9   5150.

10        The Due Process Clause of the Fourteenth Amendment protects individuals against

11   governmental deprivations of "life, liberty, and property" without due process of law.  U.S.

12   Const., amend. XIV.  "[T]he touchstone of due process is protection of the individual against

13   arbitrary action of government."  County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)

14   (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also Squaw Valley Development

15   Co. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004).  The Due Process Clause confers both

16   procedural and substantive rights — i.e., due process violations can refer either to a denial of

17   fundamental procedural fairness (procedural due process violations), or the exercise of power

18   without any reasonable justification in the service of a legitimate governmental objective

19   (substantive due process violations).  See Lewis, 523 U.S. at 845-46.  "A procedural due process

20   claim has two elements: deprivation of a constitutionally protected liberty or property interest and

21   denial of adequate procedural protection."  Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of

22   Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010); accord Thornton v. City of St. Helens, 425 F.3d

23   1158, 1164 (9th Cir. 2005) ("A procedural due process claim hinges on proof of two elements: (1)

24   a protectable liberty or property interest . . . ; and (2) a denial of adequate procedural

25   protections.") (citation and quotation marks omitted).

26   ////

27   ////

28   ////

As the court previously noted in its findings and recommendations recommending

dismissal of plaintiffs' first amended complaint for failure to state a claim:

> To the extent that plaintiffs seek to bring a procedural due process claim under the Fourteenth Amendment on the basis that defendants should have more expediently provided Liliya Walsh with a review of the decision to place the 5150 hold on her or provided her some  form of additional pre-detention process . . . , the allegations in the [first amended complaint] do not support such a claim as a matter of law because "[n]umerous courts have recognized that '[d]ue process does not require that a county provide a hearing for a person detained for seventy two hours under section 5150.'" Forte v. Hyatt Summerfield Suites, Pleasanton, 2012 WL 6599724 at *7 (N.D. Cal. Dec. 18, 2012) (quoting Barrier v. County of Marin, 1997 WL 465201 at *3 (N.D. Cal.); see Doe v. Gallinot, 657 F.2d 1017, 1022 (9th Cir. 1981) ("The initial 72 hours of detention [under California's Welfare & Institutions Code Section 5150] is justified as an emergency treatment. It is recognized that a probable cause hearing cannot be arranged immediately.").

(ECF No. 47 at 18.)[6]  Accordingly, to the extent that Liliya Walsh premises her Fourteenth

Amendment claim against Sutter, Telecare, and Placer County on allegations that she did not

receive a hearing or other review prior to or during her 72-hour detention pursuant to the 5150

hold Jeff Paxton had authorized, such a claim is not cognizable as a matter of law.  Furthermore,

to the extent that Liliya Walsh's claim under Section 1983 against Sutter, Telecare, and Placer

County is premised on other violations, such a claim is also defectively alleged because the

allegations show that required elements for a cognizable claim under section 1983 are not present

with respect to these defendants.

### 1.   Sutter and Telecare

The factual allegations in the second amended complaint show that Liliya Walsh cannot

recover against Sutter and Telecare under Section 1983 because the allegations demonstrate that

Sutter and Telecare were not acting "under the color of state law" when they engaged in their

respective actions.  In the second amended complaint, plaintiffs identify both Sutter and Telecare

as "private parties," and further identify Telecare as a corporation and Sutter as an unspecified

"entity."[7]  (ECF No. 48 at ¶¶ 3, 5, 100.)  Normally, private parties, including corporations, are not

---

[6] These findings and recommendations were adopted by the presiding district judge in full by order issued on June 25, 2014.  (ECF No. 49.)

[7] Plaintiffs also allege elsewhere in the second amended complaint that both Sutter and Telecare "acted as

1    acting under color of state law, and as such, no cause of action under Section 1983 is available.

2    Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).  However, private entities can be liable for

3    constitutional violations under certain circumstances.  See, e.g., Fonda v. Gray, 707 F.2d 435,

4    437-38 (9th Cir. 1983) ("Section 1983 actions may be brought to redress constitutional violations

5    effected under color of state law.  A private party may be considered to have acted under color of

6    state law when it engages in a conspiracy or acts in concert with state agents to deprive one's

7    constitutional rights.").  The Supreme Court has articulated four tests for determining whether a

8    private party's conduct constitutes state action:  (1) the state compulsion test, (2) the public

9    function test, (3) the joint action test, and (4) the governmental nexus test.  Franklin v. Fox, 312

10   F.3d 423, 445 (9th Cir. 2002).

11          While plaintiffs do allege that both Sutter and Telecare "engaged in a conspiracy or acted

12   in concert with state agents" to deprive Liliya Walsh of her constitutional rights, the second

13   amended complaint fails to allege any factual basis to support such a conclusion.  See Bell Atl.

14   Corp., 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

15   not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his

16   'entitle[ment] to relief' *requires more than labels and conclusions*, and a formulaic recitation of

17   the elements of a cause of action will not do.") (citations omitted) (emphasis added); Papasan v.

18   Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true

19   a legal conclusion couched as a factual allegation").  "Factual allegations must be enough to raise

20   a right to relief above the speculative level . . . on the assumption that all the allegations in the

21   complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 550 U.S. at 555.  Here, the alleged

22   facts do not support plaintiffs' contention that Sutter or Telecare were "engaged in a conspiracy

23   or acted in concert with state agents."  To the contrary, the allegations show that both defendants

24   did not act under the color of state law for purposes of Section 1983.

---

25   state officials." (ECF No. 48 at ¶ 101.)  However, because this conclusory allegation is inconsistent with
26   and in no way supported by plaintiffs' factual allegations, the court need not accept it as true. See Wuxi
     Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V., 2006 WL 6667002 (S.D. Cal. Jan. 5, 2006)
27   aff'd sub nom. Wuxi Multimedia Ltd. v. Koninklijke Philips Electronics, N.A., 280 F. App'x 968 (Fed.
     Cir. 2008); Riggs v. Clark County School Dist., 19 F.Supp.2d 1177, 1179 (D. Nev. 1998) (stating that a
28   court need not accept internally inconsistent allegations as true for purposes of 12(b)(6) motion).

With respect to Sutter, plaintiffs twice allege in the second amended complaint that "Sutter made its own decision to detain Liliya, when there was no valid 5150 hold" indicating that Sutter's actions were not made in concert with Jeff Paxton, the Rocklin Police Department, Placer County, or any other government official.  (ECF No. 148 at ¶¶ 38, 96.)  Furthermore, the alleged fact that Sutter made its own decision to detain Liliya pursuant to Section 5150 shows that it did not act under the color of state law under any of the tests articulated by the United States Supreme Court.  See Sturm v. El Camino Hosp., 2010 WL 725563 (N.D. Cal. Feb. 26, 2010) (holding that a private hospital did not act under color of state law under the state compulsion, public function, joint action, or governmental nexus tests when the hospital independently detained the plaintiff pursuant to California Welfare & Institutions Code section 5150).

Similarly, plaintiffs' allegations show that Telecare also did not act under color of state law.  The only alleged events concerning Telecare in the second amended complaint are that Liliya Walsh was transported from Sutter to Telecare and that she remained in Telecare's custody for the remainder of the 72-hour detention period, which indicates that there was no interaction between Telecare and Jeff Paxton, the Rocklin Police Department, Placer County, or any other public officer or entity with regard to the alleged events giving rise to Liliya Walsh's section 1983 claim.  Plaintiffs further allege that Telecare is "Placer County's designated [Welfare and Institutions Code section] 5150 Facility."  (ECF No. 148 at ¶ 5.)  However, such a designation is insufficient to show the existence of a conspiracy or joint action between state officials and Telecare.  See Sturm, 2010 WL 725563, at *3 (N.D. Cal. Feb. 26, 2010) (holding that a private hospital's designation as "a facility that may hold individuals for 72-hour treatment and evaluation" pursuant to Welfare & Institutions Code section 5150 is insufficient to establish that it acted under the  color of state law when detaining the plaintiff under that authority).  Finally, plaintiffs argue in their opposition to Telecare's motion to dismiss that Telecare is a proper defendant under section 1983 because it "is a private entity that acted pursuant to established state procedure."  (ECF No. 65 at 5.)  However, this allegation is also insufficient to show that Telecare acted under the color of state law because "[a]ction by a private party pursuant to [a state] statute, without something more, [is] not sufficient to justify a characterization of that party

17

1    as a 'state actor.'"  Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982); see also Flagg Bros.

2    v. Brooks, 436 U.S. 149, 165 (1978).

3          Liliya Walsh's claim under 42 U.S.C. § 1983 is deficient as to Sutter and Telecare

4    because the allegations show that both defendants did not act under color of state law when they

5    engaged in the alleged violation of Lilia Walsh's civil rights.  Given the nature of this defect and

6    the fact that plaintiffs' second amended complaint makes almost identical allegations as the first

7    amended complaint as to these two defendants, the court concludes that granting further leave to

8    amend this claim as to these two defendants would be futile.  See Moore v. Kayport Package

9    Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)

10   ("In deciding whether justice requires granting leave to amend, factors to be considered include

11   the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure

12   deficiencies by previous amendments, undue prejudice to the opposing party and futility of the

13   proposed amendment."); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).  Accordingly, the

14   court recommends that the first cause of action be dismissed with prejudice as to Sutter and

15   Telecare.

16                    2.      Placer County

17         Plaintiffs' factual allegations as to Placer County, when taken as true, are also insufficient

18   to state a claim under section 1983 as to that defendant.  Because there is no respondeat superior

19   liability under Section 1983, counties and municipalities may be sued under section 1983 only

20   upon a showing that an official policy or custom caused the constitutional tort.  Monell v. New

21   York City Dep't of Social Services, 436 U.S. 658, 691-94 (1978).  Stated differently, "[i]t is only

22   when the execution of the government's policy or custom . . . inflicts the injury that the

23   municipality may be held liable under § 1983."  Canton v. Harris, 489 U.S. 378, 385 (1989).

24   "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for constitutional

25   deprivations visited pursuant to governmental 'custom' even though such a custom has not

26   received formal approval through the body's official decisionmaking channels."  Monell, 436

27   U.S. at 690-91.

28   ////

18

1       In the second amended complaint, plaintiffs only allege the following with regard to

2    Placer County's involvement in Liliya Walsh's detention:

> 3
> 4
> 5
> 6
> 7
>
> Placer was responsible for developing a countywide Welfare and Institutions Code Section 5150 protocol, in cooperation with Sutter, Telecare, Sierra Family Services, EMS Agency and Placer Law Enforcement Agencies. Together, the agencies revised the Memorandum of Understanding (MOU) for the purpose of providing a response to individuals who appear to be experiencing psychiatric, emotional, substance abuse or serious family crisis. According to the MOU, persons "who are assessed as being a danger to themselves, a danger to others, . . . require a thorough assessment . . . ."

8

9    (ECF No. 148 at ¶ 4.)[8]

10       Like plaintiffs' first amended complaint, the second amended complaint again fails to

11    specify a particular custom or policy developed by Placer County that caused a violation of Liliya

12    Walsh's constitutional or federally-protected rights. The allegations in no way describe any of

13    Placer County's specific policies or customs relating to the 5150 process or show how any of

14    Placer County's customs or policies *caused* the alleged deprivation of Liliya Walsh's federal

15    rights. Accordingly, Liliya Walsh fails to state a cognizable section 1983 claim against Placer

16    County under the standards established in <u>Monell</u>. The court brought these deficiencies regarding

17    this claim to plaintiffs' attention when it granted Placer County's prior motion to dismiss the first

18    amended complaint. (<u>See</u> ECF No. 47 at 17.) Nevertheless, plaintiffs continue to assert this

19    claim despite a complete lack of factual allegations to support it. Given plaintiffs' repeated

20    inability to articulate any alleged factual basis on which to state this claim against Placer County,

21    the court recommends that it be dismissed with prejudice. <u>See</u> <u>Moore v. Kayport Package Exp.,</u>

22    <u>Inc.</u>, 885 F.2d 531, 538.

23    ////

---

24
25
26
27
28

[8] Plaintiffs appear to clarify in their opposition to Placer County's motion to dismiss that Liliya Walsh's claim against Placer County is also based on the alleged fact that the two unidentified workers from the Placer County Mental Hospital were somehow involved in depriving Liliya Walsh of her rights. (ECF No. 62 at 5.) However, as noted above, a claim pursuant to 42 U.S.C. § 1983 against a county cannot be based on a respondeat superior theory of liability. In other words, a county cannot be held vicariously liable under Section 1983 for the alleged constitutional torts of its employees. <u>Monell</u>, 436 U.S. at 691-94. Accordingly, plaintiffs' allegations regarding the purported Placer County employees also cannot form the basis for Liliya Walsh's claim against Placer County under section 1983.

1      B.      Plaintiffs' State Law Claims

2              As noted above, plaintiffs' operative second amended complaint also asserts state law

3      claims for false imprisonment, battery, assault, negligence, intentional infliction of emotional

4      distress, negligent infliction of emotional distress, defamation, medical malpractice, violations of

5      California Welfare & Institutions Code section 5325, and violations of California Welfare &

6      Institutions Code section 5326.2.  The court expresses no opinion regarding the merits of

7      plaintiffs' state law claims.  Instead, because plaintiffs' only federal law claims should be

8      dismissed with prejudice, the court declines to exercise supplemental jurisdiction over such state

9      law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise

10     supplemental jurisdiction over a claim . . . if – the district court has dismissed all claims over

11     which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-

12     01 (9th Cir. 1997) (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988))

13     ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of

14     factors . . . will point toward declining to exercise jurisdiction over the remaining state-law

15     claims'").  Here, given that the only federal claims asserted by plaintiffs should be dismissed with

16     prejudice and that a trial date has not yet been set, dismissal of the state law claims without

17     prejudice is appropriate.

18     VI.    Rocklin Police Department's Motion for Sanctions

19             Also before the court is defendant Rocklin Police Department's motion for sanctions

20     against plaintiffs pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the

21     court's inherent authority.  (ECF No. 53.)  Therein, Rocklin Police Department argues that

22     sanctions against both plaintiffs are warranted based on their conduct in connection with the filing

23     of the second amended complaint.  Because of these claimed actions, Rocklin Police Department

24     requests that the court sanction plaintiffs, jointly and severally, in the amount of $6,935 to be paid

25     to Rocklin Police Department for its expenses that are directly attributable to plaintiffs'

26     sanctionable conduct.

27     ////

28     ////

20

1    Federal Rule of Civil Procedure 11 provides in pertinent part as follows:

2    (b) Representations to Court. By presenting to the court a pleading or other paper-
3    whether by signing, filing, submitting, or later advocating it-an attorney or
     unrepresented party is certifying that to the best of the person's knowledge,
4    information, and belief, formed after an inquiry reasonable under the
     circumstances:
5
6        (1) it is not being presented for any improper purpose, such as to harass or
         to cause unnecessary delay or needless increase in the cost of litigation;
7
8        (2) the claims, defenses, and other legal contentions are warranted by
         existing law or by a nonfrivolous argument for extending, modifying, or
9        reversing existing law or for establishment of new law;

10       (3) the factual contentions have evidentiary support or, if specifically so
         identified, will likely have evidentiary support after a reasonable
11       opportunity for further investigation or discovery; and

12       (4) the denials of factual contentions are warranted on the evidence or, if
         specifically so identified, are reasonably based on belief or a lack of
13       information.

14
     (c) Sanctions. (1) In General. If, after notice and a reasonable opportunity to
15   respond, the court determines that Rule 11(b) has been violated, the court may
     impose an appropriate sanction on any attorney, law firm, or party that violated the
16   rule or is responsible for the violation. . . .

17       Rule 11 imposes a duty on attorneys to certify that (1) they have read the pleadings or

18   motions they file and (2) the pleading or motion is grounded in fact, has a colorable basis in law,

19   and is not filed for an improper purpose.  See Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994).

20   Rule 11also applies to pro se litigants.  See Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177

21   (9th Cir. 1996); Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994).  "Where, as here, the

22   complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong

23   inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective

24   perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before

25   signing and filing it."  Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (citing

26   Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997)).

27   ////

28   ////

1    Furthermore, pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to

2    conduct cases in any court of the United States or any Territory thereof who so *multiplies the*

3    *proceedings* in any case unreasonably and vexatiously may be required by the court to satisfy

4    personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

5    conduct" (emphasis added).  Sanctions imposed pursuant to 28 U.S.C. § 1927 "must be supported

6    by a finding of subjective bad faith," and such "[b]ad faith is present when an attorney knowingly

7    or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of

8    harassing an opponent."  Moore v. Keegan Mgmt. Co. (In Re Keegan Mgmt. Co., Sec. Litig.), 78

9    F.3d 431, 436 (9th Cir. 1996) (citations and quotation marks omitted).

10    Finally, a federal court has inherent power to impose sanctions for non-compliance with

11    the court's orders, but this power "must be exercised with restraint and discretion."  Chambers v.

12    NASCO, Inc., 501 U.S. 32, 44 (1991); see also Local Rule 110 ("Failure of counsel or of a party

13    to comply with these Rules or with any order of the Court may be grounds for imposition by the

14    Court of any and all sanctions authorized by statute or Rule or within the inherent power of the

15    Court.").  Courts are "vested, by their very creation, with power to impose silence, respect, and

16    decorum, in their presence, and submission to their lawful mandates."  Id. at 43 (citation omitted).

17    Thus, "[a] court has the inherent power to sanction a party or its lawyers if it acts in 'willful

18    disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously,

19    wantonly, or for oppressive reasons,' as well as for 'willful[ ] abuse [of the] judicial processes.'"

20    Gomez v. Vernon, 255 F.3d 1118, 1133-34 (9th Cir. 2001) (modifications in original) (citing

21    Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980))."

22    Mere recklessness, by itself, does not justify the imposition of sanctions pursuant to the

23    court's inherent power.  Gomez, 255 F.3d at 1134; Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir.

24    2001).  Instead, such sanctions must be "preceded by a finding of bad faith, or conduct

25    tantamount to bad faith."  Gomez, 255 F.3d at 1134 (citing Fink, 239 F.3d at 993); accord B.K.B.

26    v. Maui Police Dep't, 276 F.3d 1091, 1108 (9th Cir. 2002).  In regards to conduct that is

27    tantamount to bad faith, sanctions imposed pursuant to the court's inherent powers "are available

28    for a variety of types of willful actions, including recklessness when combined with an additional

22

1   factor such as frivolousness, harassment, or an improper purpose." Fink, 239 F.3d at 994; see

2   also B.K.B., 276 F.3d at 1108 (affirming sanctions imposed pursuant to the district court's

3   inherent power, finding that counsel's "reckless and knowing conduct" was tantamount to bad

4   faith).

5          Here, Rocklin Police Department asserts that sanctions are warranted against Peter Walsh

6   because he asserts claims against Rocklin Police Department in the second amended complaint

7   that the court already dismissed without leave to amend in connection with defendants' previous

8   motions to dismiss the first amended complaint.  Rocklin Police Department argues further that

9   sanctions are also warranted against Liliya Walsh because she reasserts state law claims against

10  Rocklin Police Department that are frivolous because the exhibits to the second amended

11  complaint show that she has not substantially complied with the California Tort Claims Act's

12  presentation requirements.  Rocklin Police Department also asserts that Liliya Walsh should be

13  sanctioned because she either omits or re-characterizes certain facts alleged in prior complaints

14  that are harmful to her claims so as to mislead the court.

15         In opposition to Rocklin Police Department's motion, plaintiffs argue with respect to Peter

16  Walsh's claims asserted against Rocklin Police Department that the inclusion of such claims in

17  the second amended complaint was merely the result of a drafting mistake and that plaintiffs are

18  willing to amend their complaint further so as to remove any reference to Rocklin Police

19  Department as a defendant to Peter Walsh's claims.  (ECF No. 70.)  Plaintiffs further assert that

20  Rocklin Police Department's request for monetary sanctions in the form of expenses incurred in

21  drafting its motion for sanctions is unwarranted with respect to Peter Walsh because Rocklin

22  Police Department would still have filed a motion for sanctions against Liliya Walsh even if

23  plaintiffs had not inadvertently stated that Peter Walsh is seeking claims against Rocklin Police

24  Department.  Finally, plaintiffs argue that sanctions against Liliya Walsh are unwarranted because

25  the court has not yet ruled on whether she has substantially satisfied the California Tort Claims

26  Act's presentation requirements.

27  ////

28  ////

1    In light of plaintiffs' pro se status and the number of claims asserted in this action, the

2    court recognizes that plaintiffs' continued inclusion of Rocklin Police Department as a defendant

3    to Peter Walsh's claims was likely the result of a drafting error rather than any intentional action

4    on plaintiffs' part to disobey the court's prior order dismissing such claims with prejudice.

5    However, the court is troubled by plaintiffs' noticeable attempts in the second amended complaint

6    to omit, sanitize, or otherwise alter certain allegations that were made in plaintiffs' first amended

7    complaint which appeared unfavorable to the viability of their alleged claims.  For example,

8    plaintiffs allege in the second amended complaint that "Liliya did not take more than the

9    prescribed dosage" of her pain medication even though plaintiffs alleged facts in the first

10   amended complaint not present in the second amended complaint indicating that she took more

11   than the prescribed dosage.  (See ECF No. 5 at ¶ 28; ECF No. 48 at ¶ 6.)  Furthermore, the court

12   is also troubled by plaintiffs' apparent attempts at circumventing the court's previous mandate

13   that the second amended complaint "shall not exceed 30 pages, including attachments," by

14   shrinking their attached exhibits such that they fit four to a single page of the complaint.  (See

15   ECF No. 47 at 37; ECF No. 48 at 26-28.)  Had plaintiffs not done this, their complaint would

16   have certainly exceeded the court's imposed page limit.

17   Nevertheless, in light of the court's recommendation that this case should be dismissed for

18   plaintiffs' failure to state a cognizable claim arising under federal law, therefore stripping the

19   court of jurisdiction over plaintiffs' pendent state law claims, the court declines to grant Rocklin

20   Police Department's request for monetary sanctions at this time.  However, if the presiding

21   district judge, after *de novo* review of the court's findings and recommendations, issues an order

22   that results in the court retaining jurisdiction over plaintiffs' claims alleged in the second

23   amended complaint, the court informs the parties that it would be willing to reconsider a motion

24   for sanctions based on plaintiffs' conduct noted above, as well as any future conduct.  Therefore,

25   the denial of Rocklin Police Department's motion for sanctions is without prejudice.

26   ////

27   ////

28   ////

1    VII.    Conclusion

2            Based on the foregoing, IT IS HEREBY ORDERED that:

3            1.  Defendant Rocklin Police Department's motion for sanctions (ECF No. 60) is

4    DENIED without prejudice.

5            2.  Plaintiffs' motion styled as a "request for court clarification or in alternative, . . .

6    motion to add defendant Jeff Paxton pursuant to FRCP 20" (ECF No. 69) is DENIED.

7            Furthermore, IT IS HEREBY RECOMMENDED that:

8            1.  Defendants' motions to dismiss the second amended complaint (ECF Nos. 50, 51, 53,

9    57, 58) be GRANTED to the extent outlined below:

10                   a.  Defendant Jeff Paxton be dismissed from this action without prejudice pursuant

11                   to Federal Rule of Civil Procedure 4(m).

12                   b.  The first cause of action, plaintiff Liliya Walsh's 42 U.S.C. § 1983 claim, be

13                   dismissed with prejudice as to defendants Sutter, Telecare, and Placer County.

14                   c.  Plaintiffs' remaining state-law causes of action (claims 2-11) be dismissed

15                   without prejudice for lack of subject matter jurisdiction.

16           2. The Clerk of Court be directed to close this case and vacate all dates.

17           These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

19   days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22   shall be served on all parties and filed with the court within fourteen (14) days after service of the

23   objections.  The parties are advised that failure to file objections within the specified time may

24   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

25   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

26           IT IS SO ORDERED AND RECOMMENDED.

27   Dated:  September 11, 2014

28
                                                    KENDALL J. NEWMAN
                                                    UNITED STATES MAGISTRATE JUDGE